**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(FT. LAUDERDALE DIVISION)**

**Case No.: 21-cv-62429-WPD**

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

**JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Defendant JPMorgan Chase Bank, N.A. ("Chase"), moves for entry of summary judgment against Plaintiffs Monarch Air Group, LLC ("Monarch") and David Gitman ("Gitman") on all claims asserted in the Second Amended Complaint ("SAC"), and states the following in support.

## I.    Introduction

In mid-2020, Chase's ███████████████████████████ ███████████████████████████████ in accordance with its procedures. Plaintiffs complain and purport to have suffered harm because, upon being ███████████████████, Chase was unable to execute certain wire transactions to Monarch from or through Chase accounts. Indeed, Plaintiffs' own sworn statements in this case make clear that the only damages Plaintiffs purportedly suffered resulted from the cancellation of wire transactions to Monarch from or through Chase accounts. But Chase's █████████████████████ and resulting cancellation of wire transactions to Monarch was perfectly proper and lawful. Plaintiffs make no attempt to, and cannot, claim otherwise. They do not bring a claim for breach of contract or statutory violations, nor could they.

Instead, Plaintiffs attempt to recover from Chase through claims for defamation based on statements allegedly made by Chase to its accountholders regarding the cancelled wire transactions. Because all of their purported damages arose from Chase's non-actionable decision ████████████████████, and cannot be linked to any defamatory statement, Plaintiffs' plead claims for defamation *per se* to avoid having to prove damages linked to the alleged defamation. Defamation *per se* comes with a presumption of general damages and no requirement that Plaintiffs prove actual special damages caused by the defamation (of which there are none). Their efforts fail, however, because Plaintiffs have no evidence to prove the elements of defamation *per se*, and by their own sworn statements have rebutted the presumption of general damages resulting from any alleged defamatory statements.

Plaintiffs' admissible evidence only establishes one allegedly defamatory statement made by Chase (the "Statement"): "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." Plaintiffs cannot, as a matter of law, prove the elements of their claims based on the Statement.

First, a false statement of fact is essential for recovery in any defamation action. True statements, or statements that are not readily capable of being proven false, are not actionable. By its plain language, the Statement—"We are unable to execute your transaction due to Sanctions

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

and/or Internal JPMC Policy"—means that Chase was unable to execute the transaction due to "Sanctions" or "Internal JPMC Policy" or both. As Chase was, in fact, unable to execute the transaction due to "Internal JPMC Policy," the Statement was <u>factually true, and not readily capable of being proven false</u>.

Further, the Statement was <u>not a defamatory statement</u>. For a statement to be actionable as defamation, it is of course essential that the statement be about the plaintiff. But the Statement, and the message in which Chase conveyed the Statement, did not mention or reference either Monarch or Gitman. Indeed, the Statement was <u>not a statement about either Plaintiff</u> or anyone else. The allegedly defamatory phrase, "Sanctions and/or Internal JPMC Policy," as used in the Statement, was about the "transaction" referenced in the Statement. It was not about Plaintiffs any more than it was about the Chase accountholder whose wire was cancelled, or some external factor unrelated to either party to the attempted transaction. Additionally, because the Statement refers to "Sanctions and/or Internal JPMC Policy," it was not a statement of fact that the "transaction" was cancelled due to "Sanctions." Even the word "sanctions" by itself does not implicate criminal activity. Absent any evidence of a false and defamatory statement, Plaintiffs' claims for defamation fail as a matter of law.

Moreover, even if Plaintiffs could establish all the elements of their defamation claims (which they cannot), Chase cannot be liable because the Statement made by Chase was conditionally <u>privileged</u> and made in good faith. In Florida, a statement made by one having an interest or duty in the subject matter thereof to another person having a corresponding interest or duty therein is privileged, even though the statement may be false and otherwise actionable. Such is the case here, where Chase communicated the Statement to its accountholders, each of whom had a corresponding interest in the subject matter of attempting to wire funds from or through Chase accounts. Moreover, there is no evidence of express malice—ill will or evil intent to defame Plaintiffs—in Chase's conduct, to overcome presumption of good faith. The Statement was made pursuant to Chase standard operating processes.

And, because there is no evidence of express malice, Plaintiffs are not entitled to punitive damages. Summary judgment is appropriate on all of Plaintiffs' defamation claims.

Plaintiffs also bring a claim for tortious interference based on the same allegedly defamatory statements. Such a claim is barred by the "<u>single action rule</u>," which prohibits a plaintiff from maintaining multiple actions when the claims all arise from the same publication

2

upon which a failed defamation claim is based. Plaintiffs also cannot prove the elements of the claim. There is no genuine issue of material fact that Chase had knowledge of any business relationship under which Plaintiffs had legal rights when the Statement was made, or intentional and unjustified interference by Chase with any such business relationship. Plaintiffs likewise cannot prove they were damaged as a result of the alleged interference. Additionally, because Chase's conduct was conditionally <u>privileged</u>, Plaintiffs must prove that malice was the sole basis for the interference. There is <u>no evidentiary basis to suggest that malice was the sole basis</u> for Chase's conduct.

Summary judgment should be granted in Chase's favor on all counts asserted in the SAC.

## II.     Argument

### A.     Legal Standards

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-3.

"In meeting this burden the nonmoving party 'must do more than simply show that there is a metaphysical doubt as to the material facts.'" *Hogan v. Dell Computers, Inc.*, No. CV 05-J-1439-S, 2006 WL 8437790, at *2 (N.D. Ala. Apr. 12, 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Summary judgment should be entered against the nonmoving party if the evidence does not create a "genuine issue for trial" and "a material issue of fact precluding summary judgment." *Id.* (citing Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir.2013). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 Fed. Appx. 839, 841 (11th Cir.2008).

"[A]s the Eleventh Circuit has recognized, summary dismissal of defamation cases is particularly appropriate because 'there is a powerful interest in ensuring that free speech is not

unduly burdened by the necessity of defending against expensive yet groundless litigation.'" *Larreal v. Telemundo of Fla., LLC*, 489 F. Supp. 3d 1309, 1317–18 (S.D. Fla. 2020) (quoting *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016)). "Summary judgment is an appropriate vehicle for disposition of a defamation claim and dismissal is appropriate when an element of the claim is not satisfied." *Corp. Fin., Inc. v. Principal Life Ins. Co.*, 461 F. Supp. 2d 1274, 1292 (S.D. Fla. 2006).

**B.      Chase is entitled to summary judgment on Plaintiffs' Defamation Claims.**

The SAC asserts claims for "Defamation," "Slander," and "Defamation by Implication" (collectively, the "Defamation Claims"). "Defamation, which includes libel and slander, may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1257 (S.D. Fla. 2021). "Libel is committed by publication of written statements, while slander is committed by publication of oral statements. The analysis is the same for each alleged tort." *Sloan v. Shatner*, No. 8:17-CV-332-T-27AAS, 2018 WL 3769968, at *3 (M.D. Fla. June 22, 2018).

A claim for defamation requires: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Id.* (quoting *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla.2008)). Similarly, a claim for slander requires: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Lefrock v. Walgreens*, 77 F. Supp. 3d 1199, 1201 (M.D. Fla. 2015).

Additionally, "if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication[.]" *Jews For Jesus, Inc.*, 997 So. 2d at 1108.[1] "A

---

[1]      *See Readon v. WPLG, LLC*, 317 So. 3d 1229, 1237 (Fla. 3d DCA 2021) ("A classic example of defamation by implication was before the Second District in *Heekin* . . . In *Heekin*, the plaintiff alleged that a broadcast falsely portrayed him as a spouse abuser by juxtaposing an interview with his former spouse along with stories and pictures of women who had been abused and killed by their partners. Even though the reporting did not literally claim that the plaintiff was a spouse abuser, by overplaying his former wife's story with stories of spouse abuse, the reporting created the defamatory implication that the plaintiff had abused his spouse.").

defamatory implication must be present in the plain and natural meaning of the words used." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). "Whether statements are defamatory by implication is a question of law." *Sloan*, 2018 WL 3769968, at *6.

Defamation claims can be proven in two ways—*per se* or *per quod*. "[A] defamatory statement is of a *per se* character when, 'considered alone without innuendo,' it contains (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (4) to injure a person in his trade or profession." *Mac Isaac*, 557 F. Supp. 3d at 1258 (quoting *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955)). "In a *per se* action, the statements are 'so obviously defamatory' and 'damaging to reputation' that the injurious nature of the statement is apparent from the words in the statement itself[.]" *Id.* (quoting *Paulson v. Cosm. Dermatology, Inc.*, No. 17-cv-20094, 2017 WL 2484197, at *3 (S.D. Fla. June 8, 2017)). "Thus, in determining whether a publication is defamatory <u>*per se*, consideration is given only to the 'four corners' of the publication</u> and the language used should be interpreted as the 'common mind' would normally understand it." *Id.* (emphasis added); *see Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013) (quoting *Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla.*, 956 F. Supp. 994, 1007 (S.D. Fla. 1996)) ("To gauge whether the statements are defamatory, the Court would have to look <u>outside the four corners</u> of the statements . . . the statements are <u>not defamatory *per se.*</u>") (emphasis added); *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013) ("To gauge whether the statements are defamatory, the Court would have to look <u>outside the four corners</u> of the statements . . . the statements are <u>not defamatory *per se.*</u>") (emphasis added); *Doscher v. Holding*, No. 619CV1322ORL78EJK, 2020 WL 10318564, at *2–3 (M.D. Fla. Feb. 3, 2020) ("Plaintiff alleges . . . libel <u>*per se* by implication</u> . . . the statements are <u>not</u> libel *per se* <u>because they require a reader to look outside of the 'four corners'</u> of the publication to ascertain its libelous nature.").

"This is in direct contrast to [defamation] <u>*per quod,*</u> in <u>which extrinsic facts and innuendo are needed</u> to prove the defamatory nature of the words." *Carlson*, 956 F. Supp. at 1006; *see Paulson*, 2017 WL 2484197, at *4 ("When context is considered and extrinsic facts and innuendo are needed to prove the defamatory nature of the words, the statements are not defamatory *per se.*"); *Mac Isaac*, 557 F. Supp. 3d at 1260 ("[D]efamation claims can be proven in either of the following ways: (1) defamation *per quod* . . . or (2) defamation *per se*, which does not require any

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

additional explanation in order to prove the defamatory nature of the statement.").[2] "The practical distinction between the two is that for [defamation] *per quod*, actual malice and special damages must be proved. *Barry Coll. v. Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977).[3]

**1.      Plaintiffs cannot prove the elements of their Defamation Claims.**

Plaintiffs' Defamation Claims are for defamation "per se," based on allegations of Chase (1) "stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists [sic] together with other false allegations of purported criminal activity" and (2) "juxtaposing and/or conveying incomplete information and/or omitting facts so as to imply defamatory connection between plaintiffs and the OFAC sanctions list[.]" SAC ¶¶ 27, 29, 33, 35, 39. Plaintiffs, however, have produced admissible evidence of only one allegedly defamatory statement made by Chase—the Statement referred to in paragraph 17 of the SAC: "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." Exs. 8–67; *see* SAC ¶ 17.[4] Chase made the Statement in messages sent to Chase accountholders who were involved in transactions that Chase was unable to execute. *See id*. Plaintiffs cannot prove the elements of their Defamation Claims as to the Statement.

**a.      The Statement was true.**

"A false statement of fact is the *sine qua non* for recovery in a defamation action."

---

[2]      Defamation *per quod*, which requires extrinsic facts and innuendo, should not be confused with defamation by implication, which requires the defendant to juxtapose or omit facts on or from an otherwise nondefamatory statement, so as to imply a defamatory meaning. *See Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 635 (Fla. 5th DCA 1983) ("[T]he trial court may have accepted the argument that words which imply a libelous meaning, rather than directly stating it, must be classified as libel *per quod* rather than libel *per se*. This argument . . . is entirely specious. Courts have frequently confused the quite normal proposition that a statement which may be defamatory by implication is actionable only if it conveys a defamatory meaning to ordinary persons, with the situation where extrinsic facts must be supplied to illuminate the defamatory meaning. . . . [S]tatements with defamatory implications which need no extrinsic facts to illuminate their defamatory meaning have been inappropriately classified as actionable *per quod*.").

[3]      "[G]eneral damages are presumed in *per se* defamation actions." *Upchurch v. Brickhouse Partners, LLC*, No. 8:19-CV-2580-T-35CPT, 2021 WL 8894452, at *3 (M.D. Fla. Jan. 15, 2021).

[4]      Plaintiffs have not identified any oral statement that would serve as the basis for their slander claims. *See* Ex. 70, Pls. Resps. to Def. [Chase's] Second Set of Interrogs., at No. 3 (█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████). Plaintiffs' slander claim, therefore, fails as a matter of law, and summary judgment should be granted in Chase's favor on that claim.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

*Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984). "True statements, statements that are not readily capable of being proven false," are protected from defamation actions[.]" *Turner v. Wells*, 879 F.3d 1254, 1267 (11th Cir. 2018). [5]

It is undisputed that Chase was unable to execute the transactions at issue due to an "Internal JPMC Policy" because Chase ███████████████████████████████. *See* Ex. 6, Chase's Suppl. Objs. And Answers to Pls. First Set of Interrogs.; Ex. 3, D. Gitman Dep. Tr. at 34–5. Therefore, the Statement—"We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy"—was true, and not readily capable of being proven false.

In prior pleadings, Plaintiffs urged the Court, in considering the Statement, to ignore the phrase "and/or Internal JPMC Policy," and argued that "and/or" somehow rendered the Statement ambiguous and false. *See* Pls. Reply in Supp. of their Mot. for Leave to Assert Punitive Damages [DE 74], at 7–8. However, "a publication must be considered in its totality. The court must consider all the words used, not merely a particular phrase or sentence." *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983).

Furthermore, depending on the context, "'and/or' construction creates <u>potential</u> ambiguity, not per se ambiguity." *In re Kohler*, No. 12-24328-JRS, 2017 WL 1030723, at *17 (Bankr. N.D. Ga. Mar. 14, 2017) (emphasis added). "It does, after all, have a specific meaning—<u>X and/or Y means X or Y or both</u>." Kenneth A. Adams & Alan S. Kaye, *Revisiting the Ambiguity of "And" and "Or" in Legal Drafting*, 80 St. John's L. Rev. 1167, 1189–90 (2006) (emphasis added); *see Vargas v. Quest Diagnostics*, No. CV198108DMGMRWX, 2021 WL 4642749, at *2 (C.D. Cal. Aug. 19, 2021) (quoting Garner, B., *Garner's Dictionary of Legal Usage*, at 57 (3rd ed. 2011)); www.merriam-webster.com/dictionary/and/or) ("The use of the 'and/or' phrase generally means that the <u>terms listed 'are to be taken together or individually' – not that one supersedes another</u>. Indeed, as Professor Bryan Garner (the current editor of Black's Law Dictionary and other related works) writes that the phrase 'and/or' . . . does have a specific meaning (<u>x and/or y = x or y or both</u>)") (emphasis added); *In re John Q. Hammons Fall 2006, LLC*, No. 16-21142, 2018 WL 10483503, at *2 (Bankr. D. Kan. Oct. 31, 2018) ("*[a]nd/or* . . . does have a specific meaning (<u>x</u>

---

[5]   "[F]alsity only exists" for purposes of defamation, "if the publication is substantially and materially false, not just if it is technically false." *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999); *see id.* at 706 (quoting *Masson v. New Yorker Mag.*, 501 U.S. 496, 517 (1991) ("[A] statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true. . . . The question of falsity . . . overlooks minor inaccuracies[.]")).

*and/or y = x or y or both*) (emphasis added).

As "(x and/or y = x or y or both)", the "plain meaning" of the Statement—"We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy"—was that Chase was unable to execute the transaction due to "Sanctions" or "Internal JPMC Policy" or both. *Id.*; Exs. 8–67; *Mariposa Assocs., Ltd. v. Regions Bank*, No. 13-23838-CIV, 2015 WL 1478652, at *7 (S.D. Fla. Mar. 31, 2015) ("The plain meaning of this provision, which uses the term 'and/or', is that Regions . . . could apply the net proceeds from the sale in any one of four ways. Nothing about this provision obligated Regions to choose to apply the proceeds in the first manner[.]"); *see id* at *8 (referring to the "unambiguous . . . term 'and/or'") (emphasis added); *United States v. Joyner*, No. 121CR00339RAHSRW, 2021 WL 6751606, at *6 (M.D. Ala. Nov. 18, 2021) ("By using the ambiguous term 'and/or'—that is, by alleging that Defendant is guilty of one or the other or both offences—the Government effectively charges Defendant in the disjunctive. . . . [T]he term 'and/or' in the indictment conveys . . . either Alabama, Georgia, or both.") (emphasis added).

Because Chase was unable to execute the transaction due to "Internal JPMC Policy," the Statement was factually "true," and "not readily capable of being proven false." *Turner*, 879 F.3d at 1267. Further, there is no evidence that Chase juxtaposed or omitted anything in the "four corners" of the Statement, or the message in which the Statement was made, "so as to imply" in the "plain and natural meaning of the words used," that the Statement was false. *Mac Isaac*, 557 F. Supp. 3d at 1258; *Jews For Jesus, Inc.*, 997 So. 2d at 1107; *Chapin*, 993 F.2d at 1092. The substantial truth of the Statement is fatal to Plaintiffs' Defamation Claims. *See Turner*, 879 F.3d at 1267 ("The challenged statements are true, and Turner's defamation claim falls short on this basis alone."); *Sloan*, 2018 WL 3769968, at *5 ("[T]he statements attributed to Shatner and his agents could not, as a matter of law, have been defamatory because they were not demonstrably false when made."). This Court should grant summary judgment to Chase for this reason.

**b.    The Statement was not a defamatory statement about either Plaintiff.**

"Under Florida law, words are defamatory when they charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Seropian v. Forman*, 652 So. 2d 490, 495 (Fla. 4th DCA). Most fundamentally, for a statement to be actionable as defamation, the statement must be "about [the] plaintiff." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119–20 (S.D. Fla. 2021) ("To state a claim for defamation, a plaintiff must plead that the defendant published a false statement

about plaintiff to a third party.") (emphasis added); *Valencia v. Citibank Int'l*, 728 So. 2d 330 (Fla. 3d DCA 1999) ("To state a cause of action for defamation, in Florida, a plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff[.]") (emphasis added); *see Sloan*, 2018 WL 3769968, at \*6 ("[T]he defamatory statement or implication must be of and concerning the plaintiff") (emphasis added).

The Statement—"We are unable to execute your transaction due to sanctions and/or Internal JPMC Policy"—was not a statement "about [either] plaintiff." *Corsi*, 519 F. Supp. 3d at 1120; *Valencia*, 728 So. 2d at 330. The Statement, and the message in which Chase made the Statement, never mentioned or referenced either Monarch or Gitman. *See* Exs. 8–67; *see Mac Isaac*, 557 F. Supp. 3d at 1259 ("[T]he [alleged defamatory statements] did not mention Plaintiff, the Mac Shop, or provide any other descriptive information identifying Plaintiff as a purported 'hacker.'"). Neither the Statement, nor the message in which Chase made the Statement, included "any other descriptive information" that made either Plaintiff's identity "readily ascertainable." *Mac Isaac*, 557 F. Supp. 3d at 1260 ("Here, in contrast, the only persons identified in the Explanations are the NY Post, Hunter Biden, "Ukranian biz man" and "dad"—not Plaintiff, his business, or any other descriptive information that made Plaintiff's identity readily ascertainable.").[6]

Indeed, the allegedly defamatory phrase "Sanctions and/or Internal JPMC Policy," as used in the Statement, is plainly directed to, and "about," the "transaction" referenced therein. Exs. 8–67; *Corsi*, 519 F. Supp. 3d at 1119–20; *Valencia*, 728 So. 2d at 330. The Statement is not a statement of fact about either Plaintiff, the Chase accountholder involved in the transaction, or anyone else, much less a statement of fact that either Plaintiff, or anyone else, is "on OFAC's ban list, sanctions lists, or another non-compliance lists" or engaged in "other . . . criminal activity,"

---

[6]      "[T]he law in Florida dictates that defamation *per se* must be actionable on its face" and does not require additional explanation of the words used to show that they have a defamatory meaning or that the person defamed is the plaintiff." *Mac Isaac*, 557 F. Supp. 3d at 1259 (emphasis added). Because Plaintiffs assert claims for defamation *per se*, "looking outside the four corners" of the Statement, or the messages in which the Statement was made, to show that "the person defamed is the [P]laintiff," would "run afoul the very nature of a *per se* action." *Id.* (emphasis added) (quoting *Thompson*, 224 F. Supp. 2d at 1377). To the extent Plaintiffs attempt to reconstrue their claims to encompass defamation *per quod*, there is also no evidence of any "extrinsic facts and innuendo" to prove that the Statement is about either Plaintiff. *Id.*

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

as Plaintiffs claim. *Id.*; SAC ¶¶ 27, 33, 46.[7]

The Statement was not even a statement of fact that the "transaction" at issue was cancelled due to "Sanctions." *See supra* at 7-8. The term "sanctions" does not constitute "criminal activity," as Plaintiffs suggest, regardless. *See* Erich C. Ferrari, *The Judiciary Strikes Back: Ofac's Blocking of Assets in Light of Kindhearts v. Geithner*, 6 Bus. L. Brief (Am. U.) 11, 16 (2010) ("OFAC's powers . . . do not implicate First Amendment Rights, nor are they criminal in nature.") (emphasis added); Danielle Stampley, *Blocking Access to Assets: Compromising Civil Rights to Protect National Security or Unconstitutional Infringement on Due Process and the Right to Hire an Attorney?*, 57 Am. U. L. Rev. 683, 699 (2008) ("[U]nlike a criminal defendant . . . an organization subject to OFAC sanctions has no right to appointed counsel because OFAC sanctions do not constitute criminal prosecution") (emphasis added). Additionally, there is no evidence that the term "Sanctions," even if the term were directed to either Plaintiff (which it is not), and were not modified by "and/or Internal JPMC Policy" (which it is), would be "incompatible with the essential functions of" Monarch as a private jet charter broker, such that the Statement may be defamation *per se*. *Scobie*, 2013 WL 3776270, at *3 ("[T]he [defamatory statement] does not impute to him conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business . . . Courts have found statements defamatory *per se* . . . where . . . the *per se* defamatory statements imputed conduct to the plaintiffs incompatible with the essential functions of their respective jobs. . . . Thus, there can be no claim for defamation *per se* under the facts alleged."); *c.f.*, *Walsh v. Miami Herald Pub. Co.*, 80 So. 2d 669, 671 (Fla. 1955) ("The [statements] certainly impugn the credibility of appellant . . . and since it is part of the official duty of a policeman to testify, and ergo to testify truthfully, when called, a publication such as this tends to injure him in his trade.").

There is also no evidence that Chase juxtaposed or omitted anything in the "four corners" of the Statement, or the message in which the Statement was made, "so as to imply" in the "plain and natural meaning of the words used," that the Statement was "about [either] plaintiff," or that either Plaintiff, or anyone else, is "on OFAC's ban list, sanctions lists, or another non-compliance lists" or engaged in "other . . . criminal activity." *Mac Isaac*, 557 F. Supp. 3d at 1258; *Jews For Jesus, Inc.*, 997 So. 2d at 1107; *Chapin*, 993 F.2d at 1092; *Corsi*, 519 F. Supp. 3d at 1120; *Valencia*,

---

[7]     There is also no evidence of any "extrinsic facts and innuendo" to remotely suggest the Statement meant that either Plaintiff, or anyone else, is "on OFAC's ban list, sanctions lists, or another non-compliance lists" or engaged in "other . . . criminal activity." *Paulson*, 2017 WL 2484197, at *4; SAC ¶¶ 27, 33, 46.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

728 So. 2d at 330; SAC ¶¶ 27, 33, 46.

The Statement was not, as a matter of law, a defamatory statement about either Plaintiff. *See id.*; *Seropian*, 652 So. 2d at 495 ("The term *influence peddling* is, as a matter of law, <u>neither defamatory nor a falsehood</u>. . . . the term does not impute conduct incompatible with the proper exercise of plaintiff's office, or tend to subject him to hatred, distrust, ridicule, contempt or disgrace. . . [and] the term is <u>not obviously directed to plaintiff</u>—it could equally be directed to the Clinic and its lobbyists[.]") (emphasis added). Because the Statement is not a defamatory statement about Plaintiffs, summary judgment is appropriate on Plaintiffs' Defamation Claims. *See Mac Isaac*, 557 F. Supp. 3d at 1260–62 ("[B]ased on the four corners of the Explanations, the Court cannot conclude that an individual reading the Explanations would be able to identify them with Plaintiff. Accordingly, for this reason alone, the Explanations fail to provide a sufficient basis upon which to ground an action for defamation *per se*. . . . **DISMISSED WITH PREJUDICE**"); *Sloan*, 2018 WL 3769968, at *6 ("[T]he defamatory statement or implication must be 'of and concerning' the plaintiff. The radio interview transcript does not mention Plaintiff, his business, or identifying characteristics. . . . Motion to Dismiss . . . is **GRANTED** *with prejudice*.").

### c.   Plaintiffs suffered no damages caused by the alleged defamation.

Plaintiffs bring claims for defamation *per se* in order to avoid their lack of damages from Chase's statements. However, as explained *supra*, Plaintiffs' defamation *per se* claims fail. Moreover, the admissible evidence rebuts Plaintiffs' presumption of damages for defamation *per se*. Moreover, to the extent this Court or Plaintiffs would subsequently construe Plaintiffs' claims as defamation *per quod*, the claims also fail for lack of special damages.

In response to Chase's interrogatory asking Plaintiffs to "[i]dentify and describe in detail the damages you claim to have incurred as a result of the conduct alleged in the Complaint," Plaintiffs averred the following:



Ex. 70, Pls. Resp. to Def., [Chase's] Second Set of Interrogs., at No. 5.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Thus, Plaintiffs state, their purported damages result solely from (1) credit card fees, and (2) ███████████████████████████████████ There is no mention of a defamatory statement, much less any mention of a Monarch customer cancelling a contract due to reading or hearing any alleged defamatory statement about Monarch or Gitman.

Monarch's corporate representative deposition also supports this fact, as Gitman continues to stand by the sworn response attributing all purported damages to Chase's nonactionable cancellation of transactions and to Monarch's decision to allow customers to pay with a credit card and reimburse the credit card transaction fee—as opposed to any alleged defamatory statements. *See, e.g.*, Ex. 3. D. Gitman Dep. Tr. 179:4–15 (████████████████████████████████ ███████). In fact, the credit card fees only arose because customers chose to continue doing business with Monarch, after the alleged defamation. In other words, the purported damages, according to Plaintiffs, were "caused" solely by Chase's nonactionable decision to ██████████████ ██████████████████, resulting in the cancellation of wire transactions from or through Chase accounts. *Id.* These so-called "damages" would be identical if Chase had never made a statement, and instead simply exercised its legal right (unchallenged by Plaintiffs) to cancel the transactions.[8]

Plaintiffs' interrogatory responses and deposition testimony, which demonstrate that the only damages purportedly caused by Chase resulted from the cancellation of wire transactions from or through Chase accounts, rebut the presumption of general damages that comes with defamation *per se*. *See Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1260 (N.D. Fla. 2007) ("AAHF has failed to demonstrate any injury to its reputation, decreased standing in the community, impairment in its ability to conduct its trade or business, loss in membership, or that the defamatory statements deterred anyone from conducting business with it. To the extent that such impairments are presumed by law, I find that the evidence produced at trial sufficiently rebuts those presumptions.").

Plaintiffs' interrogatory responses and deposition testimony also foreclose any showing of "special damages," to the extent Plaintiffs attempt to reconstrue their claims to encompass

---

[8]     *See, e.g.*, Ex. 2, Deposit Account Agreement (████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████).

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

defamation *per quod*. *Barry Coll.*, 353 So. 2d at 578; *see Frey v. Minter*, 829 F. App'x 432, 434 (11th Cir. 2020) ("Both Florida and Georgia require proof of special damages for a plaintiff to sustain a claim of defamation *per quod* . . . the district court granted summary judgment in favor of the defendants because Mr. Frey did not offer any evidence of special damages."). "The chief characteristic of special damages is a realized loss." *Salit v. Rud Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999). Here, each allegedly defamatory Statement was made to a specific Chase accountholder involved in a wire transaction Chase was unable to execute, and Chase provided an explanation as to why it was unable to execute the transaction, i.e., "due to Sanctions and/or Internal JPMC Policy." Exs. 8–67. To prove special damages, Plaintiffs must present evidence that (1) the Statement was made with reference to a wire transaction intended for Monarch or Gitman (as opposed to some other recipient), (2) the particular Chase accountholder read the Statement, and (3) the Chase accountholder chose to cancel a contract with Monarch because of the allegedly defamatory content of the Statement.

Plaintiffs have not provided or disclosed summary judgment evidence of special damages through their initial disclosures, responses to Chase's discovery requests, or otherwise, to create a genuine issue of material fact that any alleged defamatory statement by Chase was the proximate cause of special economic damages. All alleged damages are linked only to Chase's nonactionable conduct, and there is no evidence connecting any loss to any allegedly defamatory statement. *Cape Publ'n, Inc. v. Reakes*, which distinguishes between damages arising from non-actionable conduct and a related alleged defamatory statement disconnected from the damages, illustrates the point:

> In order to recover for defamation, a plaintiff must show that the damages were proximately caused by the defamatory statements. There was <u>no showing of proximate cause in this case concerning the statement</u> made by Meers. The trial judge instructed the jury that the case was not one of wrongful termination, but was only about defamation. When the jury awarded $400,000 to Reakes because of Meers' statement, this admonishment was apparently ignored. . . . [I]t is clear that these <u>damages came as a result of being fired</u> and learning that Meers had told Squires that she was fired for committing a crime. Meers only made this statement to Squires, who admittedly did not repeat it to others. Squires, in fact, disagreed with the decision to terminate Reakes and made efforts to help her secure employment. <u>Absent any showing of damages as a result of Meers' statement</u> to Squires, that portion of the verdict must be <u>reversed</u>.

*Reakes*, 840 So. 2d 277, 281 (Fla. 5th DCA 2003) (emphasis added, internal citations omitted).

Similarly, if Monarch absorbed credit card fees otherwise incurred by the client because Chase was unable to execute wire transactions, *see* Ex. 70, Pls. Resp. to Def., [Chase]'s Second

Set of Interrogs., at No. 5, that is not damage caused by defamation. If, due to inconvenience or otherwise, ███████████████████████████ Monarch to lose business, *id.*, that is not damage caused by defamation. Those damages would be a nonactionable consequence of Chase's unchallenged right to manage and/or operate its accounts. Cancelling wire transactions is not defamation, and it is not alleged as a cause of action in the SAC.

There is no evidence of a single Chase accountholder who stopped doing business with Monarch because of the alleged defamatory Statement. Thus, because Plaintiffs' sole categories of damages, according to Plaintiffs', result solely from (1) credit card fees and (2) ███████ ███████████████ Chase would be entitled to summary judgment as to special damages on any potential claim for defamation *per quod*. *See Carlson*, 956 F. Supp. at 1007 ("[E]ven if . . . *per quod,* Plaintiff has not met the standard for alleging special damages . . . Therefore, the Court has no choice but to rule in favor of Defendant on this count.").

> **d.    Plaintiffs cannot prove entitlement to punitive damages.**

Even if Plaintiffs were allowed to maintain an action for any form of defamation, Chase is entitled to summary judgment on any claim of punitive damages. "The Eleventh Circuit holds that "Florida is one of those states that requires a form of common law malice to sustain an award for punitive damages." *Hunt v. Liberty Lobby*, 720 F.2d 631, 650 (11th Cir. 1983). Florida courts have concluded, "[i]n order to award punitive damages in a libel action, <u>ill will, hostility or an evil intention to defame and injure</u>, must be present." *Id*. (emphasis added). Furthermore, "[d]efeating a motion for summary judgment on a claim for punitive damages is an extraordinarily high bar. Plaintiff, bearing the burden of proof on her claim, must meet the heightened standard of clear and convincing evidence in proving a heightened level of culpability[.]" *Nunez v. Coloplast Corp.*, 461 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020).

Proof of the type of common law malice required to sustain a claim for punitive damages may come from two sources: (1) the publication itself and (2) extrinsic evidence concerning the defendant's feelings toward the plaintiff. "Examples of cases where the false and defamatory words themselves were so extreme as to intrinsically show express malice are *Loeb v. Geronemus*, 66 So.2d 241 (Fla.1953) (defendants said plaintiff was guilty of evil conduct, was of low moral character, was a disgrace, a troublemaker, was not respectable, had been compelled to leave Chicago) and *Brown v. Fawcett Publications, Inc*., 196 So.2d 465 (Fla. 2d DCA 1967) (defendant said plaintiff was a murderer, rapist, and sodomite)." *Nodar v. Galbreath*, 462 So. 2d 803, 812

(Fla. 1984). In contrast, Chase's allegedly defamatory messages reflected an impartial process to provide minimalistic information to Chase's accountholders regarding the reason Chase was unable to execute a wire transaction. *See* Exs. 8–67. The messages did not contain Monarch or Gitman's name, and did not reflect any personal feelings toward Monarch or Gitman.

The extrinsic evidence regarding Chase's feelings toward Monarch and Gitman, in the form of deposition testimony, likewise indicates no "ill will, hostility or an evil intention to defame and injure" either Plaintiff. Rather, the Statement was made pursuant to Chase standard operating processes. *See, e.g.*, Ex. 1, A. Lauro Dep. Tr. at 56–59 (███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████). Chase's internal emails, and letters sent to Monarch's counsel, reflect caution exercised by Chase employees not to disclose sources or privileged matters that Chase is prohibited by law to disclose. *See, e.g.*, Ex. 68 (████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████). Chase is entitled to summary judgment as a matter of law as to any claim for punitive damages. Plaintiffs' Defamation Claims fail wholesale, as a matter of law, and Chase is entitled to summary judgment on all three claims.[9]

> **2.      The alleged statements were privileged and made in good faith.**

Even if there were evidence to establish the elements of Plaintiffs' Defamation Claims, the Statement is protected by a conditional privilege under Florida defamation law.

---

[9]      There are additional alleged statements listed in paragraphs 16 and 18 of the SAC, along with 10 alleged accountholders, but Plaintiffs did not produce any admissible evidence in discovery to show any of the statements described were made by Chase. SAC ¶¶ 16, 18. For each of the 10 alleged accountholders and statements, there is, therefore, no genuine dispute as to any material fact, and Defendant is entitled to summary judgment. *See Celotex Corp.*, 477 U.S. at 322–3. Plaintiffs do not and cannot "go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial," as to those 10 alleged accountholders and statements, with respect to any element that Plaintiffs must prove for their claims to survive. *Id.* at 323. Indeed, there is no summary judgment evidence of (1) publication; (2) falsity; (3) negligence; (4) actual damages; or (5) a defamatory statement. *See Mac Isaac*, 557 F. Supp. 3d at 1257.

### a. The statements were privileged as a matter of law.

"[O]ne who publishes defamatory matter concerning another is not liable for the publication if the matter is published upon an occasion that makes it conditionally privileged and the privilege is not abused." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citing *Nodar,* 462 So.2d at 809; *Abraham v. Baldwin,* 52 Fla. 151 (1906)). The Statement at issue is a classic example of a conditionally privileged statement under Florida law.

"In Florida, a statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein, is conditionally <u>privileged, even though the statement may be false and otherwise actionable</u>." *Jarzynka v. St. Thomas Univ. of L.*, 310 F. Supp. 2d 1256, 1267 (S.D. Fla. 2004) (emphasis added); *see John Hancock Mut. Life Ins. Co. v. Zalay*, 581 So. 2d 178, 179 (Fla. 2d DCA 1991) ("A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation."). And "[w]here the circumstances and content of allegedly defamatory statements are undisputed, or are clear under the evidence, the question of whether a qualified privilege existed is a question of law." *Zalay*, 581 So. 2d at 179.

Here, each Statement concerned a Chase accountholder's transaction that Chase was unable to execute—a subject about which Chase and its accountholder shared a "corresponding interest." *Gunder's Auto Ctr. v. State Farm Ins.,* 699 F. Supp. 2d 1339, 1341 (M.D. Fla. 2010) ("Each statement concerns the quality, timeliness, or value of the plaintiff's automobile repairs—subjects about which the insured and State Farm share a 'corresponding interest.' Accordingly, State Farm's statements are privileged."); *see* Ex. 7, A. Lauro Decl. ¶ 4 (



); Ex. 1, A. Lauro. Dep. Tr. at 43: 18–22 (

). Chase's accountholders had an interest in learning why Chase was unable to execute the transactions, and Chase had an interest in providing an explanation to its accountholders. *See Shaw v. R.J. Reynolds Tobacco Co*., 818 F. Supp. 1539, 1542–43 (M.D. Fla. 1993) ("The single publication by Defendant's employee established by Plaintiff is qualifiedly <u>privileged</u>, and the privilege was not abused in this particular instance.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Defendant's statements were made in good faith in response to an inquiry from a customer . . . the parties to the conversation shared <u>corresponding business interests</u>: the customer had an interest in learning what happened to a sales representative with whom she had a longstanding personal and business relationship, and the Defendant had the primary motive of responding adequately to a customer's inquiry."); *Lefrock,* 77 F. Supp. 3d at 1201 ("[T]he statements at issue were made by a Walgreens' pharmacist to pharmacy customers at the time the customers attempted to fill prescriptions, and the apparent purpose of the statements was to inform the customers[.]").

Accordingly, the Statement was "privileged" and Chase is entitled to the privilege because each Statement was made "in a proper manner." *Lefrock*, 77 F. Supp. 3d at 1201. A statement is made in a proper manner where "its publication was limited in scope, and the information was not disclosed to additional persons." *Shaw*, 818 F. Supp. at 1542; *see Lefrock*, 77 F. Supp. 3d at 1202 ("The pharmacists made the statements in the proper location and manner since they rendered the advice to the customers while the customers were seeking advice . . . Also, the statements were made in the proper manner since the statements were limited in scope to the specific prescriptions being filled and were not mere generalizations."). Each Statement was "limited in scope" to the specific "transaction" that Chase was "unable to execute," and each Statement was "not disclosed to additional persons," as it was made to the accountholder's private message address. Exs. 8–67.

In sum, because Chase made the Statements in the ordinary course of business to its accountholders with whom it shared a common interest in the subject matter, and made the Statements in private messages to those accountholders, each Statement was privileged under Florida law and protected from claims for defamation. *See Gunder's Auto Ctr.,* 699 F. Supp. 2d at 1341; *Shaw*, 818 F. Supp. at 1542; *Lefrock,* 77 F. Supp. 3d at 1201; *Zalay*, 581 So. 2d at ("[T]he trial court erred in not recognizing that the communication upon which this litigation was based should have been considered privileged as a matter of law."); *Jarzynka*, 310 F. Supp. 2d at 1268 ("[T]he remarks made by Dr. Soifer were privileged as a matter of law.").

### b.    Plaintiffs cannot prove express malice.

Because the statements made by Chase were protected by Florida's conditional privilege, Plaintiffs' claims cannot survive summary judgment unless Plaintiffs can rebut the presumption of good faith by producing evidence of "express malice." *Lefrock*, 77 F. Supp. 3d at 1202 (citing *Shaw*, 818 F. Supp. at 1543) ("Since the statements . . . are privileged, Lefrock's claims cannot survive summary judgment unless he can rebut the good faith presumption by producing

17

admissible evidence of express malice."); *Gunder's Auto Ctr.*, 699 F. Supp. 2d at 1342 ("The burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice[.]"). "[E]xpress malice 'is a very high standard for a plaintiff to meet.'" *Gunder's Auto Ctr.*, 699 F. Supp. 2d at 1341 (quoting *Shaw*, 818 F.Supp. at 1542).

"Express malice has been defined by the Florida courts as <u>ill will, hostility *and* an evil intention to defame and injure</u>." *Jarzynka*, 310 F. Supp. 2d at 1268 (emphasis added, internal quotations and citations omitted). The Florida Supreme Court defines "express malice" as follows:

> Where a person speaks upon a privileged occasion, but the speaker is <u>motivated more by a desire to harm</u> the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed. Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker <u>used his privileged position to gratify his malevolence</u>.

*Gunder's Auto Ctr.,* 699 F. Supp. 2d at 1342 (emphasis added) (quoting *Myers v. Hodges,* 53 Fla. 197, 213 (1907)). Plaintiffs have no evidence that Chase made the Statements with express malice.

Once more, each allegedly defamatory Statement reflected an impartial process to provide information to a Chase accountholder regarding a "transaction" Chase was "unable to execute." Exs. 8–67. The messages did not contain Monarch or Gitman's name, and did not reflect any personal feelings toward Monarch or Gitman. *See id.* The Statement was made pursuant to Chase standard operating processes. *See, e.g.*, Ex. 1, A. Lauro Dep. Tr. at 56–59. Finally, Chase's internal emails, and letters sent to Monarch's counsel, reflect caution exercised by Chase employees not to disclose sources or privileged matters that Chase is prohibited by law to disclose. *See, e.g.*, Ex. 68.

There is no evidence that Chase acted with "ill will, hostility *and* an evil intention to defame" required to establish express malice. *Jarzynka*, 310 F. Supp. 2d at 1268; *see id.* ("These allegations do not amount to pleading that Dr. Soifer acted with malice, e.g. that she made false statements about the Plaintiff . . . due to her hostility or ill will towards the Plaintiff."). There is no evidence that Chase was motivated by a "desire to harm" Plaintiffs, or that Chase used its privileged position "to gratify [its] malevolence." *Gunder's Auto Ctr.,* 699 F. Supp. 2d at 1342; *see Shaw*, 818 F. Supp. at 1543 ("Plaintiff has failed to offer evidence that Defendant acted with the 'ill will, hostility, and evil intent to defame' required to establish express malice, or that Defendant's primary motive in publishing the information was to harm Plaintiff.").

Because the allegedly defamatory Statements made by Chase were privileged, even if they were defamatory (which they are not), and there is no evidence that Chase acted with express

malice, summary judgment should be granted in Chase's favor on Plaintiffs' Defamation Claims. *See Gunder's Auto Ctr.*, 699 F. Supp. 2d at 1343 ("Although State Farm's statements (if false) might be defamatory, the plaintiff offers no evidence (other than the alleged falsity of the statements) from which a juror could infer malice . . . . The plaintiff fails to present evidence showing that State Farm's 'primary motive' was to harm the plaintiff rather than to further State Farm and the insured's mutual interest . . . State Farm's motion for summary judgment is **GRANTED.**"); *Weight-Rite Golf Corp. v. U.S. Golf Ass'n*, 766 F. Supp. 1104, 1112 (M.D. Fla. 1991) ("Plaintiffs have identified no evidence in the record from which a fact finder could reasonably find that the USGA acted with actual malice toward the Plaintiffs. Accordingly, the USGA is <u>entitled to summary judgment</u> on Count IV."); *Lefrock*, 77 F. Supp. 3d at 1202 ("However, Lefrock has not produced any evidence of express malice.").

## C.   The Court should grant summary judgment to Chase on Plaintiffs' claim for tortious interference.

Plaintiffs' claim for tortious interference fails as a matter of law, first and foremost, because it is barred by the "single action rule." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 207–09 (Fla. 4th DCA 2002). The single action rule "does not permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based." *Id.* "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Id.* at 208; *see Fridovich v. Fridovich*, 598 So.2d 65, 69 (Fla. 1992) ("It is clear that a plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repleading the same facts.").

Plaintiffs' claim for tortious interference is based upon the same allegedly defamatory statements as their Defamation Claims. *See* SAC ¶ 46. As such, the single action rule bars the claim. *See Happy Tax Franchising, LLC v. Hill*, No. 19-24539-CIV, 2021 WL 3811041, at *7 (S.D. Fla. June 7, 2021) ("Each of the alleged defamatory publications are . . . identically incorporated in the claim for tortious interference . . . [T]he claims do not arise from different occurrences . . . Count X for Tortious Interference . . . dismissed."); *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581-WM, 2020 WL 5750499, at *2–4 (S.D. Fla. Sept. 25, 2020) ("Plaintiff alleges the same conduct to support the tortious interference claim as it does to support the defamation by false implication claim. . . . Plain Bay's tortious interference with a contract claim runs afoul of Florida's single publication rule").

19

Moreover, even if Plaintiffs' claim for tortious interference were not barred by the single action rule, Plaintiffs cannot prove the elements of the claim. A claim for tortious interference with a contract or business relationship requires proof of: "(1) the existence of a business relationship . . . under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit,* 742 So.2d at 385. "[D]irect interference" is "indispensable to the existence of an actionable wrong." *Ethyl Corp.*, 386 So. 2d at 1223. The interference must be "both direct and intentional[.]" *Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986).

Plaintiffs cannot prove that Chase had knowledge of any business relationship under which the Plaintiffs had legal rights when the allegedly defamatory statements were made. Plaintiffs also cannot prove "both direct and intentional" interference by Chase with any such business relationship. *Id.* ("There is no such thing as a cause of action for interference which is only negligently or consequentially effected."). Moreover, Plaintiffs cannot prove they were damaged as a result of the alleged unjustified interference that forms the basis of their claim. *See supra*, Part (II)(B)(1)(d)(i)–(ii).

Critically, where, the defendant's conduct is conditionally privileged, *see supra*, Part II(B)(2)(a), "malice must be the *sole* basis for the interference." *Boehm v. Am. Bankers Ins. Grp., Inc.*, 557 So. 2d 91, 95 (Fla. 3d DCA 1990); *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1223 (Fla. 3d DCA 1980) ("There is, moreover, a completely separate, additional, and overriding reason which precludes Ethyl's liability for 'interference' . . . Ethyl was, as a matter of law, privileged to act as it did[.]"). There is no evidentiary basis to suggest that malice was "the *sole* basis" (or any basis) for Chase's conduct, as required. *Boehm*, 557 So. 2d at 95; *see supra*, Part (II)(B)(1)(d), (2)(b).

This Court should grant summary judgment to Chase on Plaintiffs' claim for tortious interference. *See Callaway Land & Cattle Co.,* 831 So. 2d at 208–09; *Happy Tax Franchising, LLC*, 2021 WL 3811041, at *7; *Plain Bay Sales, LLC*, 2020 WL 5750499, at *2–4; *Boehm,* 557 So. 2d at 95 ("No reasonable jury could have found that Gaston's *sole* motivation in responding in private to the executive search agent's inquiry was express malice.").

### III.    Conclusion

For the foregoing reasons, summary judgment should be granted in Chase's favor on every count in Plaintiffs' Second Amended Complaint.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Dated: January 4, 2023                    Respectfully submitted,

                                          **Benjamin Weinberg**
                                          Derek E. León
                                            Florida Bar No. 625507
                                          Benjamin Weinberg
                                            Florida Bar No. 061519
                                          **LEÓN COSGROVE JIMÉNEZ, LLP**
                                          255 Alhambra Circle, 8th Floor
                                          Miami, Florida 33134
                                          Telephone: (305) 740-1975
                                          Facsimile: (305) 351-4059
                                          Email:  dleon@leoncosgrove.com
                                          Email:  bweinberg@leoncosgrove.com
                                          Email:  eperez@leoncosgrove.com

                                          *Counsel for Defendant JPMorgan Chase Bank, N.A.*

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Case 0:21-cv-62429-WPD   Document 90   Entered on FLSD Docket 01/04/2023   Page 23 of 23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2023, a true and correct copy of the foregoing was

filed electronically and served via the CM/ECF system on all parties and counsel of record listed

below.

>Joshua R. Kon, Esq.
>Yosef Kudan, Esq.
>Alex Kaplan, Esq.
>**STOK KON + BRAVERMAN**
>One East Broward Boulevard, Suite 915
>Fort Lauderdale, Florida 33301
>Telephone: (954) 237-1777
>Email:  jkon@stoklaw.com
>Email:  ykudan@stoklaw.com
>Email:  akaplan@stoklaw.com
>
>*Attorneys for Plaintiffs*

<u>**Benjamin Weinberg**</u>
Benjamin Weinberg

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM