**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
(FT. LAUDERDALE DIVISION)

MONARCH AIR GROUP, LLC d/b/a           CASE NO.: 21-cv-62429-WPD
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

    Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

    Defendant.
_____/

**PLAINTIFFS' SECOND MOTION FOR SANCTIONS**

Plaintiffs, Monarch Air Group, LLC ("Monarch") and David Gitman ("Gitman"), move the Court to sanction Defendant, JPMorgan Chase Bank, N.A. ("Chase") under Fed. R. Civ. P. 37 and the Court's inherent authority:

### INTRODUCTION

1. Throughout this case, Chase failed to meet its basic discovery obligations, severely prejudicing the Plaintiffs, undermining the integrity of the discovery process and the foundation of this Court's truth-seeking mission. [DE 115]. Chase also unilaterally selected records to withhold and redact, and then refused to answer deposition and interrogatory inquiries, claiming they related to Suspicious Activity Reports ("SAR") that would be privileged under the Bank Secrecy Act ("BSA"). Chase even obtained affirmative relief [DE 67] upholding this assertion of a SAR privilege, based on what we now know was false testimony and representations presented to the Court. Chase's misconduct cannot be viewed as anything but a willful and bad-faith disregard of its litigation responsibilities warranting the harshest sanction. There is no way to undo or fix Chase's fraud on the Court. Thus, after the Court or a special master conducts an in-camera review of Chase's redactions to determine the full breath of Chase's misconduct and who was involved with it, the Court should strike Chase's pleadings, enter a default and grant any other appropriate relief.

### BACKGROUND

2. Plaintiff Gitman spent his childhood years under the communist thumb of the USSR. Just as the regime was collapsing, Gitman, only seven-years-old sought asylum, ultimately making his way to the United States. Gitman used our Country's unique paths of upward mobility to acquire a private jet brokering company, Monarch, which then could employ numerous hard-working individuals at all levels. While Gitman was later targeted by a sensationalist political blog, Chase presented no evidence for their third affirmative defense [DE 85 at 5-6] that any of the same customers, vendors or financial institutions saw this secluded blog

– a blog whose author has since recanted the contents, removed the blog post, admitted he had no evidence for the accusations made and that the blog post was false, and apologized. The post is attached as **Exhibit A** ("Blog Post").

3. Based on this unverified Blog Post,[1] Chase decided to close Plaintiffs' accounts, put Plaintiffs on their interdiction list, and cancel all wire payment orders to or from the Plaintiffs. Each time that Chase cancelled these wire payment orders, Chase also gratuitously defamed Plaintiffs to its customers, vendors, and SWIFT-registered financial institutions around the world – including Plaintiffs' current bank – saying the payment orders were cancelled because of "OFAC … Sanctions and/or Internal JPMC Policy." Chase admits that Plaintiffs were never subject to OFAC sanctions. In fact, no one this message is ever sent about is subject to OFAC sanctions, because this false statement is made only when Chase cancels a payment order for internal-compliance reasons and not for OFAC sanctions. *See* **Exhibit B** 2/10/23 Corp. Rep. Depo. ("2/10 Depo") at 45:5-10; 145:1-6; 149:11-150:8; 150:13-151:3.

4. Chase's interdiction list is managed by its GFIU department. *See* **Exhibit C**, 12/14/22 Corp. Rep. Depo. ("12/14 Depo") at 18:11-18.[2] A copy of the GFIU's request processed in July 2020, as produced by Chase, is attached as **Exhibit D** ("AML Interdiction List Request"). Chase chose to selectively redact the AML Interdiction List Request, among many other documents, claiming that the content would reveal SARs information subject to a non-waivable privilege belonging to the Federal government. [DE 63 at 2] ("the privilege created by

---

[1] According to what Chase represented until now, redacted content possibly showing other bases may not be shown to the Plaintiffs or the Court and is "subject to the 'absolute prohibition' against disclosure under the SAR privilege established by federal law," *see Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214, 1216–17 (M.D. Fla. 2013), especially since Chase successfully maintained that privilege in this case. [DE 67]; 75 Fed.Reg. 75593–01 at 75595, nn. 11 & 14 (SAR confidentiality covers not only a SAR but information that would reveal the existence of a SAR).

[2] Exhibits will be filed under seal pursuant to the confidentiality order.

31 U.S.C. § 5318, 12 C.F.R. § 21.11, and 31 C.F.R. § 1020.320 belongs to the government and is an unqualified privilege that cannot, as a matter of law, be waived by Chase.")

5. Chase's only disclosed reason for the GFIU's rubber-stamped request to place Plaintiffs on the interdiction list under "Case Issue" was "negative media" – i.e., the Blog Post. *See* **Exhibit D** at JPMC_1667. Every time Plaintiffs tried to inquire about even the mere identity of the "external referral," Chase's counsel instructed its witness not to answer based on an alleged SAR privilege. *See* **Exhibit C**, 12/14 Depo at 23:13-19, 24:2-8, 11-16.

6. Similarly, while Chase's trained and licensed lawyer presented as its corporate representative, Anthony Lauro, was purportedly not involved in the redactions – we still do not know who perpetrated that particular part of Chase's fraud on the court – Chase testified that the reason it redacted the "external source information" in the AML Interdiction List Request was believed to be "because of the confidentiality of the source reference." *Id*. at 25:8-9. However, rather than only use the uncorroborated content of the "negative media" from the Blog Post, the GFIU came up with entirely new lies about the Plaintiffs.

7. In particular, the GFIU's "Summary of AML Concerns/Reasons for Recommendation" wildly speculates (i) that monies Monarch sent between entities "could have been involved in potential interference with the 2016 US Presidential Election" and (ii) that "[d]uring the trial" of non-parties, a "US judge stated that in addition to their legitimate activities as airline companies, that Monarch Air Group [sic] also used as front for the Russian Mafia to launder money and traffic drugs." *See* **Exhibit D** at JPMC_1668.

8. This outlandish election-interference accusation was even too much for the political Blog Post to include, yet Chase had no hesitancy in falsely representing in its AML Interdiction List Request that it was the "media" who "identified" Monarch as the subject of these accusations. *Id*. The Blog Post contains no such allegations. *See* **Exhibit A**.

9. Nor did Chase do anything to corroborate or verify the actual content of the Blog Post, which fallaciously claimed that a judge said Monarch is a Russian Mafia front.[3] Yet before adding anyone to their AML interdiction list, Chase's own guidelines require that "[t]here is corroborated open source negative media (e.g. U.S. Dept. of Justice indictment and/or plea deal agreement)" that includes "allegations of money laundering, terrorist financing and/or corruption/embezzlement for the individua/entity in question." *See* **Exhibit E**, JPMC_1674.

10. Still, despite having no support or verification of anything in the Blog Post or the ensuing AML Interdiction List Request, Chase placed Plaintiffs on its interdiction list and began to cancel wire payment orders to or from Plaintiffs while telling every customer, vendor or bank that such cancellations occurred because of OFAC Sanctions, which Chase knows only applies to people engaging in things like human trafficking, terrorism or proliferating weapons of mass destruction.  [DE 118-2 § 2]

11. In late 2022, Plaintiffs moved to compel production of unredacted documents, including those concerning the "external source" which Chase represented to the Court related to SARs that would be absolutely privilege under the BSA.  [DE 59]  Based on Chase's representations, the Magistrate sustained Chase's invocation of the SAR privilege and declined to review the redacted documents *in camera* because "Plaintiffs filed the Motion on the eve of the discovery deadline" in December 2022. [DE 67] But the only reason the Motion was filed then was because that is when Chase produced the documents Plaintiffs sought in May 2022.

12. Indeed, when the parties conferred regarding the Joint Scheduling Report [DE

---

[3] Had Chase done even a modicum of corroboration, Chase would have quickly discovered that no judge said anything of the sort. Rather, the Blog Post was misquoting a prosecutor of a non-party who made that accusation during his argument to the judge about when Monarch was owned by another individual in 2009-2011 and which attorney, by the way, made clear back in 2013 that he was wrong and fell on his sword. *See* **Exhibit F**, Hr. Tr. at 23:1-20 & 45:18-21.  Both the attorney's accusation and retraction occurred 7 years before Chase started defaming the Plaintiffs.

28], Chase had an informational advantage. Chase understood the complexity of its internal department structure, understood that multiple departments communicate and directed one another until the OFAC sanctions statement was blindly made about Plaintiffs directly to their customers, vendors and bank. Chase also understood how much time it would take to diligently locate responsive documents in Chase's custody, possession or control. Thus, when conferring in good faith about the discovery cutoff, Plaintiffs reasonably relied on Chase's estimation for how long it would take to produce the documents and thus agreed to the statement that the "Parties do not anticipate a need for variance from the standard discovery rules." *Id*. at ¶4.

13. The parties then continued extensively working through the discovery issues in good faith without needing Court intervention. Plaintiffs always acted with diligence in seeking to prepare the case for trial. To be sure, when Chase sought to use its own dilatory production to disallow Plaintiffs from seeking punitive damages, the Court saw through Chase's gambit and found that Plaintiffs "demonstrated the requisite level of diligence" even under the "heightened standard for amendments," and that Plaintiffs "sought discovery long before the Court's established discovery deadline." [DE 77 at pg. 3]

14. Putting aside the three productions months after the discovery cutoff that are the subject of Plaintiffs' first Motion for Sanctions [DE 115], it is undisputed that Chase failed to produce responsive documents until right before the cutoff, which Plaintiffs only agreed to because, in good faith, it justifiably relied upon Chase's estimations of the time it would take to locate and compile its records at face value. Had Plaintiffs known that Chase's Byzantine web of departments would obfuscate discovery and even make Chase unable to find and produce documents until the discovery cutoff – and beyond – Plaintiffs would have sought adequate time to complete Chase-dependent fact discovery, much less Chase-dependent expert discovery.

15. But now Chase has completely abandoned and contradicted its representations to

the Court that the "external source" information related to SARs. Why? Because Chase now believes that an undisclosed Congressional Subpoena, and internal communications and investigations allegedly resulting from same, are helpful for its case at trial. [DE 163]. Although Plaintiffs explicitly requested[4] this in its discovery as it was highly germane to their case in chief – to show things like malice and to confirm Chase's wanton and reckless conduct warranting punitive damages – Chase should have also produced the subpoena and internal documents as part of its Rule 26 Disclosures in support of its qualified privilege affirmative defense [DE 85 at 5], which requires that Chase show that its statements were made in good faith.[5]

## MEMORANDUM OF LAW

When Chase wanted to hide the ball from the Plaintiffs, it falsely told the Court that federal law required it to withhold and redact documents and information concerning the "external source" because Chase said they related to SARs. But with Chase's latest late disclosure, we now know that Chase's claim, that the withheld information and documents were withheld because they would reveal the existence of SARs, was false. Rather, the "external source" was a Congressional Subpoena sent to Chase about "Monarch."[6] Because Chase's

---

[4] Plaintiffs' Requests for Production and Interrogatories sought "all internal Chase communications regarding any decisions to close Monarch's and David Gitman's accounts with Chase" and asked for detailed "reason or reasons for Chase's decision to not allow Chase customer to transfer money" to Plaintiffs. *See* **Exhibit G** at 15 and **Exhibit H** at 2-3, respectively.

[5] *Nowik v. Mazda Motors of Am. (E.) Inc.*, 523 So. 2d 769, 770 (Fla. 1st DCA 1988) ("The essential elements in finding a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner.")

[6] "[T]the SAR privilege does not shield from discovery reports, memoranda, or underlying transactional documents generated by a bank's internal investigation procedures." *Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214, 1217 (M.D. Fla. 2013), citing to *In re Whitley*, 10-10426C-7G, 2011 WL 6202895, at *1 (Bankr. M.D.N.C. Dec. 13, 2011)(explaining that internal bank reports or memoranda regarding an investigation into suspicious activity are not protected by SAR privilege (citation omitted)); *Freedman & Gersten, LLP v. Bank of Am.*,

fraudulent scheme to conceal information that Chase now concedes is relevant for trial caused irreparable prejudice to the Plaintiffs and undermined the entire discovery process, the Court should strike Chase's pleadings, enter a default, and award Plaintiffs' their reasonable attorneys' fees incurred from Chase's misconduct. The Court has two bases to grant such relief.

First, "[d]iscovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." *Miccosukee Tribe of Indians of Florida v. Cypress*, 12-22439-CIV, 2013 WL 10740706, at *1 (S.D. Fla. June 28, 2013) (quoting *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1322 (10th Cir.2011) (Gorsuch, J.))  A party thus must provide or describe all documents that it "may use to support its claims or defenses." Fed R. Civ. P. 26(a)(1)(A)(ii).  "Rule 37(c)(1) requires absolute compliance with Rule 26(a), in that it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified." *United States v. Batchelor-Robjohns*, 2005 WL 1761429, at *2 (S.D. Fla. June 3, 2005) (quoting *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)) (cleaned up). The non-producing party has the burden to show that its actions were substantially justified or harmless. *Id.*

---

2010 WL 5139874, at *3 (D.N.J. Dec. 8, 2010) (finding SAR privilege does not encompass "documents and facts pertaining to the suspicious activity" that "were created in the ordinary course of business" (citations omitted)); *Weil v. Long Island Sav. Bank*, 195 F.Supp.2d 383, 389 (E.D.N.Y.2001) (explaining that "supporting documentation" is not covered by the SAR privilege); Cotton, 235 F.Supp.2d at 814 ("Nothing in the Act or regulations prohibits the disclosure of the underlying factual documents which may cause a bank to submit a SAR. Furthermore, those underlying documents do not become confidential by reason of being attached or described in a SAR."). *But see United States v. LaCost*, 2011 WL 1542072, at *8 (C.D.Ill. Apr. 22, 2011) (concluding that "incident reports that let to the filing of a SAR and other documents related to the filing of SARs" are within the SAR privilege).

Chase cannot do so here. Chase falsely represented to the Court that it must withhold documents and redact others because they would reveal the existence of SARs. The "external source" information that Chase's attorneys instructed its witnesses not to even identify, refused to divulge in interrogatory answers, and redacted throughout had nothing to do with SARs. Had Chase not lied to the Court about why it was withholding that information, the Court would have compelled its production. Now that Chase's misrepresentations prevented Plaintiffs from being able to plumb these issues, Plaintiffs have no way of knowing how many more nails they would have found to seal the coffin shut on Chase's reckless conduct causing it to tell Plaintiffs' customers, vendors and banks that wires were cancelled because of OFAC Sanctions. This information would likely also be invaluable in responding to Chase's affirmative defenses that it had a qualified privilege to severely libel the Plaintiffs because it would have confirmed Chase's utter bad faith. Chase's lies to the Court prevented Plaintiffs from knowing. Simply excluding these documents would just allow Chase to reap the benefits of their original fraudulent scheme to keep this information hidden. Thus, the gravity and breadth of Chase's false representations to the Court can be cured only through striking all of Chase's pleadings and rendering a default in favor of the Plaintiffs.

Second, "courts have an inherent authority to control and regulate their dockets," including sanctioning litigants for fraud on the court. *Bassett v. Wal-Mart Stores E., LP*, 18-61984-CIV, 2019 WL 4691824, at *1 (S.D. Fla. July 10, 2019), citing *Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995). "That authority includes the power to sanction litigants, even by dismissing a case, for abusive litigation practices." *Id*.; s*ee also Martin v. Automobili Lamborghini Exclusive, Inc*., 307 F.3d 1332, 1335 (11th Cir. 2002). A party commits fraud on the court when clear and convincing evidence shows that it has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to

adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Vargas*, 901 F. Supp. at 1579 "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978). "Neither perjury nor the proffering of misrepresentations to the opposing party typically constitutes fraud on the court." *Bassett v. Wal-Mart Stores E., LP, 18-61984-CIV,* 2019 WL 4691824, at *1 (S.D. Fla. July 10, 2019)*, citing to SEC v. E.S.M. Group, Inc.*, 835 F.2d 270, 273–274 (11th Cir. 1988). Rather, the party must direct its "actions *to the court*—either by submitting fabricated evidence or else by concealing the true party in interest." *Id.*, *citing to Vargas*, 901 F. Supp. at 1579.

Here, there is more than clear and convincing evidence. Rather, Chase openly admits in numerous filings with the Court that it redacted and held back information about the "external source," even though now we know from its most recent filing and the exhibits thereto that such matters did not relate to any SAR material whatsoever. Instead, the "external source" was a Congressional Subpoena that Chase's scheme allowed it to keep hidden until now, since it wants to use a single cherry-picked document advantageously at trial. Plaintiffs' inability to take any written or deposition discovery into this highly-relevant matter, directly giving rise to the defamatory communications Chase then made to anyone trying to do business with Plaintiffs, thoroughly neutered Plaintiffs' case. Plaintiffs would need to start discovery over again with requests for production, interrogatories and depositions of all of Chase's witnesses to start plumbing the genesis of Chase's false statements about the Plaintiffs, especially after the Magistrate found that Chase's corporate representative's lack of knowledge was within acceptable limits. [DE 101]. Now Chase is saying that its corporate representative Anthony Lauro will testify about another reason for placing Monarch on the interdiction list that he did

not testify about. [DE 163] 1, 1 n.1.  To say that Chase's misrepresentations to the Court regarding the content that it redacted and withheld hampered Plaintiffs' ability to present their claims or rebut Chase's defenses, is to say far too little.  Only the severest of sanctions will rectify the prejudice to the Plaintiffs and uphold the integrity of the discovery process.

## **CONCLUSION**

Chase already struck out with its three prior discovery abuses.  But this misconduct goes far beyond mere late disclosures undermining Plaintiffs' ability to conduct reasonable discovery into its defamation claims.  Rather, this misconduct strikes at the heart of the civil justice system.  If courts cannot rely on litigants to truthfully represent the nature of withheld and redacted information, including those involving the absolute SAR privilege, then the entire discovery process becomes a mere façade to conceal a tissue of lies.  That is exactly what happened here.  Plaintiffs were not allowed to obtain any documents, interrogatory responses or deposition answers about conduct that now even Chase concedes is relevant at trial.  Limiting Chase's ability to use the improperly withheld documents would not cure the Plaintiffs' prejudice of being unable to present any of this extremely illuminating information to the Jury.  In any event, because it is not yet known how far Chase's fraud on the court went, the Court should in camera review or appoint a special master to do so and report to the Court regarding the nature of the withheld and redacted documents. Then, Plaintiffs respectfully request that the Court appropriately sanction any individual involved in the false representation that the documents related to SARs, and, in any event, strike Chase's pleadings and enter a default.

**WHEREFORE**, Plaintiffs, Monarch Air Group, LLC, and David Gitman, respectfully request that this Honorable Court enter an Order granting Plaintiffs Motion for Sanction, together with an award of reasonable attorney's fees and costs, and any other relief that this Honorable Court deems just and proper.

Request for hearing: The Plaintiffs request that the Court conduct a hearing on this motion so that Plaintiffs can present evidence and, if ordered, the special master's findings, regarding the many instances of false testimony and representations made regarding Chase's invocation of a SAR privilege for information, redactions and documents that were not related to any Suspicious Activity Reports made under the Bank Secrecy Act. The Plaintiffs believe that a 1-hour hearing would be sufficient for these purposes.

Certificate of Conferral: We hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good-faith effort to resolve the issues but have been unable to resolve the issues, except that Chase still maintains that even though it recently disclosed the identity and documents relating to the "external referral," [163] it would still need to confer with FinCEN and give them an opportunity to intervene before disclosing the redacted documents relating to this "external referral" that we know is not related to any Suspicious Activity Reports.

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on **May 1, 2023**, on all parties and counsel of record: Derek E. León, Esq., dleon@leoncogrove.com; Benjamin Weinberg, Esq., bweinberg@leoncosgrove.com, eperez@leoncosgrove.com; Sofia Manzo, Esq., smanzo@leoncosgrove.com, aquezada@leoncosgove.com; LEÓN COSGROVE, LLP 255 Alhambra Circle, 8th Floor Miami, Florida 33134.

                Respectfully submitted,

                STOK KON + BRAVERMAN
                Attorneys for Plaintiffs
                One East Broward Boulevard, Suite 915
                Fort Lauderdale, Florida 33301
                Tel.: (954) 237-1777
                Fax: (954) 237-1737
                Email: service@stoklaw.com

                */s/ Joshua R. Kon, Esq.*
                ROBERT A. STOK, ESQ.
                Florida Bar No. 857051
                (rstok@stoklaw.com)
                JOSHUA R. KON, ESQ.
                Florida Bar No. 56147
                (jkon@stoklaw.com)
                YOSEF KUDAN, ESQ.
                Florida Bar No. 1010261
                (ykudan@stoklaw.com)