UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT. LAUDERDALE DIVISION)

MONARCH AIR GROUP, LLC d/b/a                          CASE NO.: 21-cv-62429-WPD
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.
_____/

**PLAINTIFFS' MOTION FOR DISCOVERY TO
SUPPORT THEIR MOTION FOR RELIEF FROM JUDGMENT**

      Plaintiffs, Monarch Air Group, LLC d/b/a Mercury Jets, a Florida limited liability company ("Monarch") and David Gitman ("Gitman"), move the Court to permit discovery to support their Motion for Relief from Judgment under Fed. R. Civ. P. 60.

**INTRODUCTION**

      In the concurrently filed motion for relief from judgment, Plaintiffs explained how Defendant, JPMorgan Chase Bank, N.A. ("Chase"), engaged in substantial discovery misconduct and made material misrepresentations to them and the Court, entitling them to relief under Rule 60. Because of Chase's campaign of deception, Plaintiffs need additional discovery to show the full extent of Chase's misconduct. First, Plaintiffs ask that the Court review Chase's redacted documents, *in camera*, because they were redacted based on a made up SARs privilege and now even Chase confirmed at the eve of trial that they were relevant to how Chase supposedly followed their operating processes to put Plaintiffs on their interdiction list to defame Plaintiffs about OFAC sanctions. Indeed, we now know that Chase lied to Plaintiffs and the Court about the privilege when it conceded that the Congressional Subpoena that Chase wanted to use at trial was part of those redactions. Beyond that Plaintiffs need discovery, including depositions, into Chase's claim that Plaintiffs were put on Chase's AML list because Plaintiffs' transactions were in round numbers and based on the Congressional Subpoena, and into Chase's recently discovered political bias. Such discovery will further confirm that Chase engaged in fraudulent misconduct and made

misrepresentations affecting Plaintiffs' ability fully and fairly present its case and how it would have allowed Plaintiffs to reshape their case to rebut Chase's qualified privilege defense, among other changes. Plaintiffs thus request that the Court allow them to conduct reasonable discovery to support their Rule 60 motion.

## STANDARDS OF REVIEW

To succeed on a motion filed under Rule 60(b)(3), the moving party "need not demonstrate that the result of the former proceedings would be different in order to show that he was precluded from a full and fair hearing—he need only show that he was prevented from fully and fairly presenting his case or that the new evidence would have allowed him to re-shape his case, including the form it would have been in upon appeal. This subsection of the Rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, 2008 WL 11399608, at *6 (S.D. Fla. May 13, 2008) (citations omitted); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 156–57 (5th Cir.2004) (quoting *Montgomery v. Hall*, 592 F.2d 278, 278–79 (5th Cir.1979)).

Rule 60 discovery is proper if the requesting party has shown a colorable basis that some fraud, misrepresentation, or misconduct has occurred. *Keelan v. United States*, 12-CR-20496, 2022 WL 990627, at *2 (S.D. Fla. Apr. 1, 2022) (citing *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999); *Pearson v. First NH Mortg. Corp.*, 200 F.3d 30, 35 (1st Cir. 1999)). Post-judgment discovery is appropriate to look into a failure to disclose or produce information requested in discovery. *Catskill Dev., LLC v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 314 (S.D.N.Y. 2003) (allowing post-judgment discovery and explaining that "even an accidental failure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of Rule 60(b)(3).") (collecting cases).

## ARGUMENT

The Court should allow Plaintiffs to conduct discovery to show that Chase made fraudulent misrepresentations and engaged in other misconduct. First, the Court should order Chase to produce unredacted versions of its AML Interdiction List Request, AML Policy, and internal emails so the Court can evaluate the full extent of Chase's misstatements to the Court. The Court should also allow Plaintiffs to conduct discovery into Chase's round-number proffer, Chase's actions after receiving the improperly-withheld Congressional Subpoena, and Chase's political bias towards Plaintiffs. That discovery will reveal that Chase improperly withheld such evidence

based on a bogus SARs privilege or based on a decision to selectively produce documents while claiming to produce all responsive documents.

    A. <u>Chase improperly redacted documents under a bogus SAR privilege</u>

As detailed in Plaintiffs' rehearing motion, Chase heavily redacted its produced AML Interdiction List Request copy. *See* App.-K at 745.[1] Chase testified that under the redactions was an "external referral," *see* App.-F at 402; 12/14/22 Corp. Rep. Depo. at 25:8-9, but unequivocally refused to produce a less-redacted version to show what was under the redactions based on a SAR privilege. [DE 63 at 8] (explaining that Chase "produced the responsive documents to Plaintiffs, but redacted portions of the documents containing the protected material," because upon Plaintiffs' conferral "request for disclosure of the protected material, as required, Chase 'declined to produce' the material, citing 31 U.S.C. § 5318, 12 C.F.R. § 21.11, and 31 C.F.R. § 1020.320," the SAR Privilege). After claiming the identity of the external referral was privileged (and never correcting that false claim), Chase moved *in limine* to include a Congressional Subpoena that it claims was the genesis for placing Plaintiffs on its AML Interdiction List according to its standard operating processes – the key that unlocked its qualified privilege defense on which it obtained summary judgment. *See* Mot. in Limine [DE 163].

Comparing the AML Interdiction List Request and Chase's testimony and filings, Chase redacted the source of the external referral, Congresswoman Maxine Waters,[2] and asserted that it was redacting that information because of the confidentiality of the source, even though Chase has now tried to use the Congressional Subpoena in the case. The Court needs to look under the redaction to confirm Chase's misrepresentations to the Court (that the information was protected by the SARs privilege) and Chase's misconduct (redacting non-privileged information). Similarly, if Chase was not lying in its motion *in limine*, the Court will see under the redactions that Chase added Plaintiffs to the AML Interdiction List Request because it had some round-number transactions.

---

[1] Citations to the Appendix filed with the Motion for Relief from Judgment will be "App-[tab letter] at [page number]."
[2] Verifying that she found nothing nefarious about Plaintiffs during her investigation, the sender of this Subpoena, Congresswoman Maxine Waters, later used Monarch for two flights to a foreign, hurricane torn country and was charged "round numbers." App-AB at 1078. Obviously this Congresswoman did not think her Subpoena meant Plaintiffs were actually involved with money laundering, election interference or anything else Chase's GFIU made up about the Plaintiffs, much less OFAC sanctions that Chase told almost anyone that would listen.

In fact, Chase essentially confirmed that it lied when it told the Court that it redacted the AML Interdiction List Request because of a SARs privilege. At the hearing on Plaintiffs' second sanctions motion, Chase's counsel listed off three things that were redacted: 1) "The negative media, [2]] the source of the external referral being the House Finance Subcommittee that issued it which investigates money laundering, [3]] and the transaction history of the Plaintiff." App-AD at 1142; 5/11/2023 Hr. Tr. 34:6-9. This was after Chase's counsel explained that the reason Chase disclosed the subpoena or round-number analysis before trial and not during discovery was because of the way the case devolved. *Id.* 33:16-34:6. Yet Chase then asserted that it would be incredulous to think that "congressional subpoena" was under the redactions, *Id.* 35:3-8, even though Chase testified that under the redaction was an external referral and Chase asserted in its motion in limine that the external referral was the subpoena. Chase's argument for why it disclosed the subpoena and round-number analysis on the eve of trial was because Chase claimed it needed the information to rebut Plaintiffs' arguments. But if Chase was telling the Court the truth when it first asserted that it redacted the AML Interdiction List Request, then it lied to the Court that the subpoena and round-number analysis were not privileged. One way or the other, Chase lied to the Court to gain an unfair advantage here.

To be sure, to its Motion in Limine, Chase attached as Ex. B an Excel file with a minuscule and non-representative sampling of Monarch's transactions—some rounded and some not—and proclaimed that the "jury will hear testimony from…Anthony Lauro, that transactions involving round-numbered amounts are potential indications of money laundering activity." ("Round Numbering Proffer") [DE 163 at 1]. But these transactions are from 2022, after this lawsuit was filed. App-AC at 1088. Yet Chase represented to the Court, and then the Magistrate, that these transactions were analyzed to put Plaintiffs on the interdiction list according to Chase's "standard operating processes" in 2020, two years earlier.  And, even to date, Chase has disclosed no emails, letters, spreadsheets or other documents evidencing a round numbering analysis in 2020 (assuming any even exists and this was not just an after-the-fact rationale created in litigation).

In any event, by seeking to introduce this evidence at trial, Chase revealed that the information is not protected by the SARs privilege. Chase also misrepresented that the round-number transaction information was protected by a privilege and engaged in misconduct by redacting non-privileged information.  Logically, Chase's redactions could not be protected by the SARs privilege. Under 31 U.S.C. § 5318(g)(2)(A)(i), a bank may not "reveal any information that would reveal that the transactions has been reported." Under 12 C.F.R. § 21.11 and 31 C.F.R. §

1020.320, a bank may not "disclose a SAR or any information that would reveal the existence of a SAR." The existence of the Congressional Subpoena or the Subpoena itself would not reveal any SAR or its existence. All the Subpoena shows is Congresswoman Water's request for information about "Monarch" and not Chase's own reporting. A reference to round-numbered transactions would also not reveal the existence of a SAR. Even if other information within the AML Interdiction List Request reveals the existence of a SAR (and especially now, that is a big "if"), that does not make the Congressional Subpoena or the round-numbered transactions privileged. This previously-redacted information bears directly on Chase's claim that it operated according to standard processes when interdicting Plaintiffs to defame them, and Chase attempted to use it as trial and placed it as its very first statement to the Court in the Pre-Trial Stipulation. [DE 193 at 3]. Then how can it possibly be subject to a SAR Privilege belonging to the Federal Government? It can't. Chase lied.

Similarly, Chase lied when it claimed its redactions to its AML Policy were based on a SARs privilege. A bank's policies should never be redacted for privilege reasons because it is improper to include privileged information in a document that is widely disseminated to banking industry regulators, and a bank policy would never reveal the existence of a SAR. *See* App-AE at 1216 (R. Flores Aff. ¶ 12). The Parties did confer about some of the redacted policies that Chase asserted were redacted for relevancy concerns. Chase's counsel provided two policies for Plaintiffs' counsel to review; 1) Chase's wire policy, and 2) Chase's Communication Guidelines for Sanctions policy. *See* App-Y at 960 (Y. Kudan Aff. ¶ 17). Chase provided no other policies. Chase claimed that any other redacted policy was redacted under the SAR privilege. *Id.*

B. <u>Chase's misrepresented why it would not respond to discovery.</u>

Chase also failed to disclose material information that Plaintiffs requested, falsely asserting that the information and documents were privileged. Plaintiffs asked Chase to "Explain, in detail, the reason or reasons for Chase's decision to not allow Chase customers to transfer money to Monarch or David Gitman...." *See* App-T at 915 (Pls.' 1st Interr. # 3). Chase objected to the interrogatory claiming the "attorney-client privilege, the work product doctrine, the joint defense or common interest privilege or doctrine, or any other applicable privilege, immunity, or protection against discovery." *Id*. Chase then answered, subject to the privilege assertion, "JPMC states that negative media coverage was a reason, among others for the decision to place Monarch and Gitman on an interdiction list." *Id.*

When conferring with Chase about discovery, Plaintiffs' counsel asked why the specifics of the "other" reasons were not included and Chase's counsel said that the information was privileged. *See* App. Y at 957 (Y. Kudan Aff. ¶ 16). When asked what privilege, Chase's counsel responded that he was referring to the SARs privilege based on the citations he given earlier in the conferral call. *Id.* Plaintiffs also requested "All internal Chase communications regarding any decisions not to permit money to be transferred to Monarch or David Gitman using Chase infrastructure." *See* App-S at 906 (Pls.' 1st RFP #15). Chase objected saying the information was not relevant and made the same general privilege claim it made to Plaintiffs' interrogatory. *Id*. Chase did not produce the Congressional Subpoena, any communications discussing the Congressional Subpoena, any GFIU communications, or any documents referencing round numbers. It defies belief that Chase does not have a single communication referencing the Subpoena or round numbers if that was truly the reasons Chase had a qualified privilege to spread falsehoods about the Plaintiffs since Chase used those to follow standard operating processes. *See* App-AE, R. Flores Aff. (discussing how because the Congressional Subpoena references "Monarch" and not "Monarch Air Group," Chase must have other documents relating to the subpoena that it failed to disclose). Chase also blacked out the name of the GFIU manager who reviewed the AML Interdiction List Request, thus disallowing Plaintiffs from delving into this issue. App-K at 746.

At the sanctions hearing, Chase faulted Plaintiffs for not moving to compel better answers to Plaintiffs' interrogatories. Chase concedes that the information is relevant but wants to blame Plaintiffs for trusting Chase's privilege assertion—that the Magistrate already sustained—to excuse its failure to comply with its discovery obligation. This alone shows that Chase engaged in misconduct. *See Catskill Dev.*, 286 F. Supp. 2d at 314 (holding that even an accidental failure to disclose is misconduct under Rule 60(b)(3)). Here, Chase intentionally chose to withhold discoverable information that it believes is relevant, and its only excuse is that Plaintiffs did not move to compel again but respected the Magistrate's SARs ruling believing that it was not based on outright falsehoods.

Requiring Chase to fully respond to Plaintiffs' interrogatory and request for production will show that Chase withheld information relevant to their qualified privilege defense based on false privilege claims. Plaintiffs should also have an opportunity to depose Chase about these withheld documents, including those who decided to withhold the documents and who decided to

assert the privilege to hide relevant information. Such information will allow Plaintiffs to present even more clear and convincing evidence of Chase's misrepresentations and misconduct.

C. <u>Chase did not disclose its political bias.</u>

Lastly, Plaintiffs should be allowed to conduct discovery into Chase's claim in the AML Interdiction List Request that "Monarch Air Group [redacted] were identified in the media [redacted] as moving millions of dollars between each other and additional entities in Russia, the USA, and offshore jurisdictions around the times of the 2016 US Presidential Election that could have been involved in potential interference with the 2016 US Presidential Election." Chase produced no discovery showing any media reports—or even blogposts—including these outlandish allegations. Chase again redacted information within this claim and asserted that it is privileged under the SARs statute and regulations. How could the media that included this information be privileged? Plaintiffs, or at least the Court (if the information is truly privileged), should be permitted to see the full extent of Chase's deception and whether Chase redacted relevant, non-privileged information to make it seem like their allegations came from media, rather than some other source.

This bears directly upon Chase's express malice that Plaintiffs would have the burden to prove had Chase not withheld information and come forward with sufficient evidence on its qualified privilege defense. *Nodar v. Galbreath*, 462 So.2d 803, 811 (Fla.1984) (holding that the qualified privilege vanishes if the defendant made the statement with express malice). "Proof of express malice may be established indirectly, i.e., by proving a series of acts which, in their context or in light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive." *Corp. Fin., Inc. v. Principal Life Ins. Co.*, 461 F. Supp. 2d 1274, 1293 (S.D. Fla. 2006) (citing *McCurdy v. Collis,* 508 So. 2d 380, 382 (Fla. 1st DCA 1987); and *S. Bell Telephone & Tel. Co. v. Roper,* 482 So. 2d 538, 539 (Fla. 3d DCA 1986)).

Indeed, Chase's political bias is further verified by recent widely-reported accounts of attorneys generals from all over the country, including in Florida, asserting that Chase deviates from its standard policies to cancel transactions for religious and political reasons. *See* https://www.myfloridalegal.com/newsrelease/attorney-general-moody-demands-chase-bank-stop-discriminating-against-customers-based (last visited May 30, 2023); Attorneys' General Letter to Chase Re: Discrimination by Chase Due to Religious or Political Affiliation https://www.myfloridalegal.com/sites/default/files/2023-05/Web%20Link_0.pdf. Because of

Chase's false SARs redactions of the AML Interdiction List Request, Plaintiffs cannot know for sure unless the Court conducts an *in camera* review. But this accusation must have come from some other source (unless Chase created it out whole cloth), yet Chase wanted to make it look like the "media" alleged that too so it could include it, but not the rest— i.e., not the truth. Only after Chase disclosed the Congressional Subpoena did Plaintiffs have any indication that Chase had another source (if it did not make up the accusation) for its allegations that Plaintiffs interfered with the 2016 Presidential Election.

Plaintiffs should be allowed to conduct discovery into Chase's political bias towards Plaintiffs. The non-redacted portions of Chase's AML Interdiction List Request make it likely that Chase added Plaintiffs to its interdiction list for political reasons.[3] Plaintiffs requested "[a]ny documents embodying or referencing a decision by Chase not to transfer money to accounts held by either or both Plaintiffs," and "[a]ll internal Chase communications regarding any decisions not to permit money to be transferred to [Plaintiffs] using Chase infrastructure." App-S (Pls.' 1st RFP #4 & #15). Chase only produced the AML Interdiction List Request in response to Request 4 and produced no responsive documents for Request 15. Based on this newly uncovered evidence of Chase's political bias, Plaintiffs should be permitted to conduct discovery to find out which other documents Chase did not disclose, which would be evidence of Chase's misconduct.

## CONCLUSION

The direct and circumstantial evidence shows that Chase made misrepresentations to Plaintiffs and the Court about non-SARs material being protected by that privilege and engaged in misconduct by improperly redacting that relevant discoverable information. Plaintiffs have shown some fraud—Chase's lies to the Court—and are entitled to discovery to fully flesh out Chase's misconduct. Allowing the requested *in camera* review and discovery will allow Plaintiffs to further show by clear and convincing evidence that Chase engaged in misconduct and made misrepresentations, entitling Plaintiffs to relief under Rule 60(b)(3). The Court should not close its eyes to such evidence and should grant this motion. The Court should require the following discovery:

- *In camera* review of the AML Interdiction List Request, AML Policy, and redacted internal emails;
- Following the Court's *in camera* review, production of the unredacted documents;

---

[3] Chase, without attribution, claimed that Plaintiffs were involved with interference in the 2016 presidential elections.

- Production from Chase of any communications about the Congressional Subpoena;

- A complete answer to Interrogatory # 3;

- Production of all documents and communications relating to the Round-Number analysis, and if there are no such documents, a statement under the penalty of perjury that the documents do not exist;

- Production of all documents or communications referencing Plaintiffs and interference in the 2016 Presidential Election, and if there are no such documents, a statement under the penalty of perjury that the documents do not exist;

- Production of all GFIU documents and communications about Plaintiffs and the AML Interdiction List Request;

- Depositions of the GFIU member or members who conducted the investigation leading to Plaintiffs being included on the AML Interdiction List Request;

- Every document and communication referencing Plaintiffs; and,

- *In camera* review for any document which Chase logs as privileged.

**WHEREFORE**, Plaintiffs, Monarch Air Group, LLC and David Gitman respectfully request that this Honorable Court enter an Order granting Plaintiffs' Motion for Discovery in support of their Rule 60 Motion, together with any other relief that this Honorable Court deems just and proper.

Certificate of Conferral: We hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good-faith effort to resolve the issues but have been unable to resolve the issues.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on **June 7, 2023**, on all parties and counsel of record: Derek E. León, Esq., dleon@leoncogrove.com; Benjamin Weinberg, Esq., bweinberg@leoncosgrove.com, eperez@leoncosgrove.com; Sofia Manzo, Esq., smanzo@leoncosgrove.com, aquezada@leoncosgove.com; LEÓN COSGROVE, LLP 255 Alhambra Circle, 8th Floor Miami, Florida 33134.

Respectfully submitted,

*/s/Joshua R. Kon, Esq.*
Robert A. Stok
 Florida Bar No. 857051
Joshua R. Kon
 Florida Bar No. 56147
Yosef Kudan
 Florida Bar No. 1010261
**STOK KON + BRAVERMAN**
One East Broward Boulevard, Suite 915
Fort Lauderdale, Florida 33301
Telephone: (954) 237.1777
Fax: (954) 237.1737
Email: rstok@stoklaw.com
Email: jkon@stoklaw.com
Email: ykudan@stoklaw.com
Secondary: service@stoklaw.com

*Counsel for Plaintiffs Monarch Air Group, LLC and David Gitman*