**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
(FT. LAUDERDALE DIVISION)

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

    Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

    Defendant.
_____/

CASE NO.: 21-cv-62429-WPD

**PLAINTIFFS' REPLY IN SUPPORT OF [DE 213] MOTION FOR DISCOVERY TO SUPPORT THEIR MOTION FOR RELIEF FROM JUDGMENT**

Because Defendant, JPMorgan Chase Bank, N.A., engaged in substantial discovery misconduct and made material misrepresentations to the Plaintiffs, the Court, and the Magistrate, the Plaintiffs deserve relief under Rule 60. Plaintiffs only ask for discovery to confirm the breadth of Chase's widespread lack of candor. Chase fails to address much less rebut most of the evidence showing that Chase obtained the Judgment by misleading everyone about why Chase redacted discovery and why it did not disclose its reasons for adding Plaintiffs to its AML List by its "standard operating process." This was *the* lynchpin notion Chase used to try to meet its burden on its qualified privilege defense. Yet even in response, Chase still refuses to come clean with the Court that it redacted the Congressional Subpoena and round-number analysis from the AML Request. Nor does Chase claim that reference to the Subpoena or the round-number would reveal the existence of a SAR. Plaintiffs' expert confirms the opposite. App. 1213. Thus, the requested discovery will inevitably show that Chase again lied to the Court—either when it claimed that it redacted documents protected by a SARs privilege or when it "needed" to introduce previously-redacted information on the eve of trial. Both simply cannot be true.

**I.**     **Plaintiffs showed Chase's fraud on the Court and other Rule 60 misconduct**

Chase asserts that Plaintiffs rely on "rank speculation" to show that Chase falsely told the Court that it redacted documents based on a made-up SARs privilege and that the Court already decided this issue. To begin with, Chase's colliding SARs representations have never been ruled on. But even Chase's most recent representations at the sanctions hearing establish colorable fraud, entitling Plaintiffs to discovery. Chase affirmed that it redacted negative media, the Subpoena, and Plaintiffs' transactional history from the AML Request. This concession again confirms that Chase lied to the Court to avoid disclosing relevant discoverable information. Either the SARs privilege protects that information and Chase could not disclose it, or Chase lied.

Chase's entire rebuttal to Plaintiffs' careful explanation of its misconduct is "[p]ortions of Chase's document production…were, in fact, redacted pursuant to the BSA and its implementing

regulations." Even if true, that unsworn statement does not negate Plaintiffs' showing that Chase redacted the Subpoena and transactional analysis and then falsely claimed that a SARs privilege applied. Nor does Chase dispute that it lied when claiming to redact the AML Policy and emails for SARs. Nor does Chase justify or even explain why it misled Plaintiffs claiming the "other reasons" Chase added Plaintiffs to its interdiction list were SARs privileged. Chase may have appropriately redacted "portions" of the documents. But that does not touch the unrebutted, clear and convincing documentary and testimonial evidence showing that Chase misled the Court about the other "portions" of the redactions, including within the AML Request and the AML Policy.

Next, Chase claims that Plaintiffs already raised some of these issues before the cumulative prejudice emerged. But Chase's redactions were never reviewed to see if Chase told the truth that its documents included SARs information. Instead, the Court declined to review Chase's redactions first, because Plaintiffs moved to compel close to the discovery deadline right after they received the redactions days earlier, and then with no stated reason.[1] Nor could Plaintiffs have asked, as Chase suggests, for the Court to review the Magistrate's decision to decline an *in camera* inspection, because the Court granted summary judgment the next morning after the Subpoena was stricken. This is Plaintiffs' first chance to ask the Court to review the false redactions.[2]

Plaintiffs have shown a compelling *prima facie* case that Chase and its attorneys bamboozled the Court by claiming that its redactions were to protect SARs information. Chase's testimony and representations to the Court reveal the charade that Chase withheld highly-relevant information when it was in their interest and then later revealed that information when Chase

---

[1] Chase claims that the Court found that Plaintiffs have not yet presented evidence that it acted willfully or in bad faith. The Court has not held an evidentiary hearing and only heard counsels' argument. Further, the Court's ruling, striking evidence, was only about Chase's hiding the Subpoena and not its SARs misrepresentations.

[2] The Court referred Plaintiffs' discovery motion to Magistrate Valle for an evidentiary hearing, while allowing Plaintiffs to amend their Rule 60 motion should the Court permit discovery. The Court has already determined that Plaintiffs' motion shows enough to merit a hearing. Plaintiffs have subpoenaed Chase to produce documents and testimony at the hearing, including an unredacted AML Request. Reviewing that evidence will show that Plaintiffs are entitled to more discovery supporting the evidence and inescapable inferences that Chase defrauded the Court.

thought it was to their advantage. Chase also engaged in gross discovery abuses—which are alone more than enough to vacate the Judgment.[3] Discovery will lay bare Chase's full misconduct.

**II.     New discovery will show that Chase is not entitled to a qualified privilege**

The only evidence supporting the "dispositive" summary judgment issue was false testimony, including that Chase used "standard operating processes" in a proper manner, on a proper occasion, and in good faith by referencing an inapplicable policy and withholding the real "process" used to defame the Plaintiffs. Chase also misses the import of recent disclosures showing Chase's political bias, confirmed by expert testimony. App.1216-18 Combining these new revelations with Chase's absurd claims that Plaintiffs interfered with the Presidential Election, shows that Chase withheld information, warranting Rule 60 discovery and relief.

Indeed the dispositive issue is not, as Chase contends, express malice but whether Chase has a qualified privilege at all. Only had Chase presented evidence supporting each qualified privilege element would the burden shift to Plaintiffs to show express malice—a bad motive like political bias. Yet the Court only presumed Chase acted in good faith, because it made defamatory statements according to its SOPs. [DE 205] 11. The only evidence supporting that claim was false testimony that Chase defamed Plaintiffs according to an inapplicable policy, not the withheld SSU's Communication Policy governing and requiring false statements on all occasions.

Thus, besides illuminating Chase's discovery abuses that procedurally entitle Plaintiffs to reopen the case under Rule 60, the requested discovery will also show on the merits that Chase did not defame on a proper occasion or manner—qualified privilege elements that were not fully and fairly considered on summary judgment. Chase claims that it did everything according to its SOPs.

---

[3] Chase conflates the Rule 60(b)(3) standard with the "fraud on the court" standard. Under Rule 60(b)(3), a court can vacate a judgment if it was obtained through misconduct preventing the moving party from fully and fairly presenting or shaping its case. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) (citations omitted). "[I]t does not require that the information withheld be of such nature as to alter the result in the case." *Id.* Yet rather than argue that Plaintiffs fully and fairly presented their case or that discovery would not aid Plaintiffs in showing how they would have done so, Chase argues that more discovery would not change the results. [DE 226] 10. Plaintiffs' requested discovery will show how Chase obtained the judgment unfairly.

But those procedures require Chase to falsely publish that it cancels transactions due to OFAC sanctions that it actually cancels for compliance. Discovery into Chase placing Plaintiffs on the interdiction list, including Chase's political motivations and any 2020 transactional analysis (rather than proffered 2022 intra-litigation analysis), will also show Chase's deviations from its policies. Putting Plaintiffs on a list that requires Chase to make false statements, without following its procedures, cannot be a proper occasion or manner insulating false statements. And how could Plaintiffs have taken discovery when Chase disclosed this all after discovery?[4]

More incredulous still, Chase argues that it disclosed potential political bias by falsely redacting the AML Request to make it appear as if the "media" said that Plaintiffs interfered with democratic elections. But even this misleadingly-redacted AML Request was only produced on the eve of the discovery cutoff. Without Chase producing any other records and accepting Chase's representations that it could not disclose its "other reasons" because they are SARs privileged, Plaintiffs had no reason to believe that Chase's misconduct included political bias. But then Chase disclosed that Congresswoman Maxine Waters sent it a subpoena about "Monarch"—not Monarch Air Group (before she later used Plaintiffs to fly to a foreign hurricane-torn country, twice).

In any event, combining these new facts with state Attorney Generals investigating Chase for political bias shines a different light on Chase's actions. Now, Chase's unsupported claims that Plaintiffs interfered with the elections reveals a valence of political bias previously concealed. At bottom, discovery will show more about how Chase deviated from its "standard policies" when interdicting and libeling the Plaintiffs, rendering its qualified privilege defense nugatory.

---

[4] The Court did find that an oblique reference in a deposition was sufficient disclosure of Chase's claimed transactional analysis. Three points. First, Chase's testimony was after the discovery cutoff. Plaintiffs could do no more written discovery to get more information that Chase's attorney represented was anyways protected by a privilege. Second, Chase later testified that the privileged "external referral" did this analysis. Now Chase is saying for the first time that it did the analysis itself. Third, Chase supported its round-number analysis with a spreadsheet only including transactions from after this case was filed. Chase has never produced a single page related to its claimed analysis. Discovery will show whether Chase did any such analysis at all, much less in the proper manner or proper occasion.

## CONCLUSION

Chase's "best" argument is that Plaintiffs should have cynically assumed Chase lied about the SARs privilege and compelled more about Chase's interdiction and defamation of the Plaintiffs under its "standard operating procedures." But Chase's excuse that Plaintiffs did not make successive motions to compel is not an excuse at all. Instead, it is a complete admission of Chase's intentional non-disclosure under Rule 26. Even had Plaintiffs never moved to compel, that does not give Chase a green light to hide and redact highly-germane information throughout the case.

Perhaps the best way to show the amassed prejudice is imagining a world where Chase fully and timely disclosed the Communication Policy, the Subpoena, the round numbering analysis, communications of the GFIU's "standard operating processes" invoking these to interdict and defame Plaintiffs, and unredacted versions of the AML Request and AML Policy. Plaintiffs could have shaped their case by plumbing Chase's use of these to interdict and defame Plaintiffs through the AML Policy and Communication Policy, concretizing that no policy was complied with in good faith, and the latter was fashioned in bad-faith to lie on auto-pilot on every occasion.

However, the whole time Chase was concealing and withholding all this information about the "standard operating processes" themselves and Chase's non-compliance with same. No less, Chase did so based on a bogus SAR privilege claim that Chase later jettisoned on the eve of trial when it no longer served its use. As a consequence, Plaintiffs were not able to shape a full and fair response to Chase's unadorned and false declarations at summary judgment that it complied with these "standard operating processes." Thus, while a Rule 60 motion asks not whether the qualified privilege defense was correctly decided—but whether it was fairly decided—here, the Court can rule rest assured that Chase obtained both an unfair and incorrect judgment.

In the meantime, Plaintiffs presented a more-than-sufficient threshold showing that Chase made misrepresentations and hid evidence. As such, discovery should be permitted to see the extent to which Chase's hands are thoroughly unclean.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on **July 5, 2023**, on all parties and counsel of record: Derek E. León, Esq., dleon@leoncogrove.com; Benjamin Weinberg, Esq., bweinberg@leoncosgrove.com, eperez@leoncosgrove.com; Sofia Manzo, Esq., smanzo@leoncosgrove.com, aquezada@leoncosgove.com; LEÓN COSGROVE, LLP 255 Alhambra Circle, 8th Floor Miami, Florida 33134.

Respectfully submitted,

/s/Joshua R. Kon, Esq.
Robert A. Stok
 Florida Bar No. 857051
Joshua R. Kon
 Florida Bar No. 56147
Yosef Kudan
 Florida Bar No. 1010261
**STOK KON + BRAVERMAN**
One East Broward Boulevard, Suite 915
Fort Lauderdale, Florida 33301
Telephone: (954) 237.1777
Fax: (954) 237.1737
Email: rstok@stoklaw.com
Email: jkon@stoklaw.com
Email: ykudan@stoklaw.com
Secondary: service@stoklaw.com

*Counsel for Plaintiffs Monarch Air Group, LLC and David Gitman*