# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
(FT. LAUDERDALE DIVISION)

Case No.: 21-cv-62429-WPD

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTIONS
TO ORDER ON PLAINTIFFS' MOTION FOR DISCOVERY TO
<u>SUPPORT THEIR MOTION FOR RELIEF FROM JUDGMENT</u>**

Defendant JPMorgan Chase Bank, N.A. ("Chase") responds to Plaintiffs' Objections to Magistrate Judge Alicia O. Valle's Order on Plaintiffs' Motion for Discovery to Support their Motion for Relief from Judgment (DE 261, "Objections") as follows.

## I.      Introduction

Plaintiffs Objections challenging Magistrate Judge Alicia O. Valle's Order (DE 240) denying Plaintiffs' Motion for Discovery to Support their Motion for Relief from Judgment (DE 213, "Discovery Motion") has no merit. The Objections misstate the standard of review applicable to the Order, and mischaracterize the scope of the Order, purporting to establish an error, to no avail. Further, Plaintiffs misunderstand the basis on which judgment was granted to Chase and instead use the Objections as another opportunity to convey their views about Chase and the underlying facts of the case.

Plaintiffs by and large disregard Judge Valle's rulings that the Discovery Motion was "akin to a motion for reconsideration of the court's prior discovery rulings," and "plaintiffs cannot resurrect pretrial discovery grievances in the guise of a Rule 60(b) motion." Those rulings, alone, provide grounds for denying the Discovery Motion. And Plaintiffs fail to otherwise establish any error in the Order.

The Discovery Motion presented no grounds for post-judgment discovery, and none are identified in the Objections. Plaintiffs appear to concede they have no colorable claim of fraud. And the record is clear, Plaintiffs were not precluded by non-disclosure from fully and fairly presenting their case on a question that proved dispositive. Hence, after a two-day evidentiary hearing, hearing testimony from four witnesses, and conducting an in-camera review of redacted documents about which Plaintiffs complained, Judge Valle held, "[P]laintiffs have not provided sufficient facts or law to warrant a reversal or amendment" of the Court's "prior rulings," pre-Judgment, on the very same issues raised in the Discovery Motion.

Plaintiffs also argue for relief in the Objections under the "waiver-by-affirmative-reliance" doctrine, the "at-issue" doctrine, and the "sword and shield" doctrine. Those arguments, raised for the first time in the Objections, may not be considered. The arguments have nothing to do with discovery in support of Plaintiffs' Motion for Relief from Judgment (DE 212, "Motion for Relief"). And the cited doctrines do not apply, here, in any event. The Objections should be denied.

## II.      The Facts and Procedural History

The Court entered its Order Granting Chase's Motion for Summary Judgment (DE 205, "Summary Judgment Order") on May 12, 2023, granting Chase's Motion for Summary Judgment (DE 90) on all claims asserted in Plaintiffs' Second Amended Complaint ("SAC"). The Court granted summary judgment to Chase on Plaintiffs' defamation claims because the undisputed facts established

that the alleged defamatory statement (the "Statement")—"We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy"—in each alleged instance, "occurred on a privileged occasion." DE 205 at 7. "Where it has been established that defamation occurred on a privileged occasion, then the plaintiff must prove that the defamation was made with express malice." *Id*. And the Court held, correctly, that Plaintiffs "failed to meet their burden to show express malice." *Id.* at 11. The Court entered its Final Judgment in Chase's favor (DE 206) the same day.

On June 7, 2023, Plaintiffs filed the Motion for Relief, seeking relief from the Final Judgment under Federal Rules 59(e) or 60, along with the Discovery Motion, seeking discovery to support the Motion for Relief. The Discovery Motion, as with all previous discovery motions, was referred to Judge Valle, and briefing on the Motion for Relief was stayed. DE 215.

Judge Valle held a two-day evidentiary hearing on the Discovery Motion, heard testimony from four witnesses, and conducted an in-camera review of redacted documents about which Plaintiffs have complained. Even given a two-day post-judgment evidentiary hearing, Judge Valle held, Plaintiffs failed to provide any relevant new evidence. DE 253-2 at 51:1–5. Judge Valle denied the Discovery Motion, finding "[P]laintiffs d[id] not have a colorable claim of fraud that would entitle them to seek post-judgment discovery," and incorporated the Court's prior rulings into the record. *Id.* at 51:13–14; 50:8–13; *see* DE 240 ("Order"). Following the denial of the Discovery Motion, the Court lifted the stay on briefing the Motion for Relief. DE 241.

Chase filed its Response to Plaintiffs' Motion for Relief from Judgment (DE 263) on August 21, 2023. Plaintiffs filed their Objections on August 18, 2023, objecting to Judge Valle's Order. The Objections present no error in the Order and should therefore be denied.

### III.    Argument

**A.    Plaintiffs' misstate the standard of review applicable to Judge Valle's Order**

Judge Valle's Order should be reviewed under the "clearly erroneous or contrary to law" standard, not "*de novo*" as Plaintiffs contend. DE 261 at 7–8. Plaintiffs' analysis is limited to 28 U.S.C. § 636(b), which sets forth the jurisdiction and powers of a magistrate judge. Magistrates typically hear and determine discovery motions pursuant to section 636(b)(1)(A), under which a district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." Under the statute, reconsideration may be considered

"where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.* Section 636(b)(1)(B) permits magistrates to issue reports and recommendations to district judges on the dispositive motions excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses, and of prisoner petitions challenging conditions of confinement. Under the statute, the reports and recommendations are subject to *de novo* review. *See id.* § 636(b)(1)(C). Section 636(b)(3) provides, "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." Plaintiffs assert that the Order was entered pursuant to section 636(b)(3), because their Discovery Motion was filed post-Judgment, and conclude that the Order should therefore be reviewed *de novo*. *See* DE 261 at 7 ("Therefore, because the Magistrate's Rule 60 discovery decisions fall under § 636(b)(3), the Constitution requires that they be reviewed with fresh eyes, *de novo*."). But section 636(b)(3) does not provide any standard of review for orders entered pursuant thereto, and it certainly does not provide for a non-dispositive discovery motion, like Plaintiffs' Discovery Motion, to be reviewed *de novo*, rather than under the "clearly erroneous or contrary to law" standard set forth in section 636(b)(1)(A) for non-dispositive discovery motions.

Plaintiffs also ignore Federal Rule of Civil Procedure 72, which governs objections to a magistrate's order. Rule 72 once more makes clear, in determining the applicable standard of review, the question is whether the underlying matter was "dispositive." Fed. R. Civ. P. 72(a) ("NONDISPOSITIVE MATTERS. . . ."); Fed. R. Civ. P. 72(b) ("DISPOSITIVE MOTIONS . . ."). Per Rule 72, Orders on non-dispositive matters are reviewed, upon timely objection, under the "clearly erroneous" or "contrary to law" standard. Fed. R. Civ. P. 72(a).

Plaintiffs' Discovery Motion is a non-dispositive discovery matter. *See Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 310225, *1 (S.D. Fla. June 2, 2016) ("Evidentiary rulings, as well as rulings on discovery motions and motions to amend pleadings, are generally considered non-dispositive."); *Johnston v. Aetna Life Ins. Co.*, 282 F. Supp. 1303, 1312 (S.D. Fla. 2017) ("[T]here is no doubt that magistrate judges are afforded broad discretion in resolving nondispositive discovery disputes."). The Order should, therefore, be reviewed under the "clearly erroneous" or "contrary to law" standard. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)91)(A); *In re LeFande*, 297 F. Supp. 3d 1, 5 n.2 (D.D.C. 2018) ("Because the management of post-judgment discovery is comparable in importance to the management of pretrial discovery, the Court will review the Magistrate Judge's Criminal Contempt Order under the 'clear error' standard."); *JW Gaming Dev., LLC v. James,* 544 F. Supp. 3d 903, 926 (N.D. Ca. 2021) (holding, the the Federal Magistrates Act "expressly contemplates that [magistrates] may handle pretrial discovery in the first instance, so they are well-positioned to do the same thing post-

judgment" and should be reviewed for clear error).[1]

"Clear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005). Factual findings may be reversed "only if there was an abuse of discretion." *Id.* (citing *S.E.C. v. Merkin*, 283 F.R.D. 699, 700 (S.D. Fla. 2012)). "A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Leonard v. Scott*, 2018 WL 11303840, at *1 (S.D. Fla. Mar. 26, 2018) (denying appeal of magistrate's orders because they were not "clearly erroneous, contrary to law, or an abuse of discretion") (quoting *Merrett v. Liberty Mut. Ins. Co.*, 2013 WL 5330258, at *1 (M.D. Fla. Sept. 23, 2013)).

**B.    Plaintiffs' Objections present no error in the denial of their Discovery Motion.**

**1.    Judge Valle did not err by "requiring Plaintiffs to show a colorable fraud."**

Plaintiffs argue in their Objections that Judge Valle "legally erred by requiring Plaintiffs to show a colorable fraud before it would permit discovery[.]" DE 261 at 7., Argument, Part I. By way of explanation, Plaintiffs note that they "relied on two cases supporting their entitlement to Rule 60 discovery," referring to *Keelan v. United States*, 2022 WL 990627 (S.D. Fla. Apr. 1, 2022) and *Catskill Dev., LLC v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309 (S.D.N.Y. 2003). *Id.*  However, Plaintiffs' Discovery Motion cited no case from the Eleventh Circuit permitting post-judgment discovery, which Plaintiffs admit does not exist. *See* DE 261 at 7 ("It is true that the Eleventh Circuit has not explicitly *permitted* Rule 60 discovery . . ."). In *Keelan*, the Court considered a request for post-judgment discovery in connection with a motion brought under Rule 60(d)(3). *See Keelan*, 2022 WL 990627, at *1.[2] Magistrate Judge Goodman noted in *Keelan*, "other circuits have held that courts may permit discovery to unearth evidence of fraud on the court," but he denied the motion in any event because Keelan failed to make a "colorable" claim of fraud on the court. *Id*. at *2. In *Catskill*, the court in New York determined that non-disclosure of six audio tapes containing discussions about the contract in dispute "precluded" the Rule 60(b)(3) movant "from fully and fairly presenting their case on the question that proved dispositive," and therefore permitted limited and targeted discovery on the previously undisclosed tapes. *Catskill*, 286 F. Supp. 2d at 320. Plaintiffs' argument is that Judge Valle "only consider[ed] *Keelan*" and thereby "require[d] Plaintiffs to show a colorable fraud." DE 261 at 7 ("[T]he Magistrate declined to grant Plaintiffs' Rule 60 discovery motion, only considering *Keelan*, and found that Plaintiffs had not

---

[1]    The court in *James* reviewed and affirmed the magistrate's ruling *de novo*, notwithstanding, "out of an abundance of caution." *Id.* Similarly here, Plaintiffs fail to establish any error in the Order under any standard.

[2]    Rule 60(d)(3), titled "Other Powers to Grant Relief," states that "[t]his rule does not limit a court's power to: . . . set aside a judgment for fraud on the court."

shown fraud as required by *Keelan*."); *see id.* ("The Magistrate found that Rule 60 discovery requires 'colorable fraud'").

This argument ignores the entirety of the Order. Judge Valle did not "only consider *Keelan*." The record is clear, Judge Valle considered all arguments raised by Plaintiffs, under *Keelan* and *Catskill*, and rejected them. *See, e.g.*, DE 253-2 at 42:12–43:16, 51:15–16 ("Plaintiffs argue that defendant's misconduct, in effect, precluded plaintiffs' ability to fully and fairly present their case and rebut defendant's qualified privilege defense . . . Relevant to plaintiffs' motion are Federal Rule of Civil Procedure 60(b)(3) and (d)(3) . . . . Accordingly, the motion at ECF No. 213 is denied[.]").

As a threshold matter, Judge Valle held, "relevant to the [C]ourt's ruling are the general standards for reconsideration of a prior decision or order." *Id.* at 44:24–45:12; *see id.* (citing *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561 (S.D. Fla. 1992); *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316 (M.D. Fla. 1999); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689 (M.D. Fla. 1994). Judge Valle found that Plaintiffs' Discovery Motion simply reiterated issues and arguments raised and addressed before the Final Judgment was entered, and held, "plaintiffs' motion for post-judgment discovery at ECF-213 is akin to a motion for reconsideration of the court's prior discovery rulings," referring to the Court's rulings on Plaintiffs' four pre-Judgment discovery motions. *Id.* at 46:3–6; DE 67; DE 101; DE 175; DE 203; *see also, e.g.*, DE 253-2 at 46:12–15, 46:20–23, 47:5–6 ("[P]laintiffs make the same arguments in the current motion as they previously made . . . The undersigned already considered these arguments. . . . [P]laintiffs reiterate arguments previously raised in their second motion for sanctions. . . . the undersigned ruled on this issue . . . this is the third time this issue has been raised before the court.). "Moreover," Judge Valle held, "plaintiffs cannot resurrect pretrial discovery grievances in the guise of a Rule 60(b) motion." *Id.* at 46:6–8 (citing *Scutieri v. Paige*, 808 F. 2d 785(11th Cir. 1987)). "For both of these reasons," Judge Valle denied the Discovery Motion. *Id.* Yet "both of these reasons" go without mention in Plaintiffs' Objections.

Further in the Order—having reviewed Plaintiffs' post-Judgment motions, having presided over a post-judgment two-day evidentiary hearing with scores of exhibits and testimony from four witnesses, and having conducted an *in camera* review of documents Plaintiffs have repeatedly claimed were "fraudulently" redacted "based on a made-up SAR Privilege," DE 213 at 1—Judge Valle held that "[P]laintiffs have not provided sufficient facts or law to warrant a reversal or amendment of my prior rulings[.]" DE 253-2 at 50:10–11. Whereupon those prior rulings—which addressed the very issues and arguments raised again, post-Judgment, in Plaintiffs' Discovery Motion, and which found no fraud by Chase or prejudice to Plaintiffs—were adopted "by reference' into the Order. *Id.*

Judge Valle also considered so-called evidence of "purported recently discovered political bias," and found it was "not relevant to the issues before the court." *Id.; see id.* ("Simply put, these news articles, including the AG letter, are not relevant to plaintiffs' claims, defendant's placement on the AML Interdiction List, or the issues presented in the motion.").

Additionally, Plaintiffs' request for an *in camera* review of redacted documents was denied "as moot under the circumstances," because "the [C]ourt accepted defendant's offer raised during the hearing to review the [unredacted] documents[.]" *Id*. at 48:19–20.

All told, and put another way, Judge Valle did not "only consider *Keelan*" and err by "requiring Plaintiffs to show a colorable fraud," because the record is clear that Judge Valle did not only consider *Keelan* and require Plaintiffs to show a colorable fraud. Judge Valle found multiple grounds for denial of Plaintiffs' Discovery Motion, of which the absence of fraud was but one.

### 2. The Discovery Motion was "akin to a motion for reconsideration of the court's prior discovery rulings," and "[P]laintiffs cannot resurrect pretrial discovery grievances in the guise of a Rule 60(b) motion."

Plaintiffs' Objections by and large disregard Judge Valle's rulings that the Discovery Motion was "akin to a motion for reconsideration of the court's prior discovery rulings," and "plaintiffs cannot resurrect pretrial discovery grievances in the guise of a Rule 60(b) motion." DE 253-2 at 45:2–46:8 (citing *ZK Marine, Inc*; 808 F. Supp. at 1563; *Offices Togolais Des Phosphates*, 62 F. Supp. at 1331; *Sussman*, 153 F.R.D. at 694; *Scutieri*, 808 F.2d at 794–95); *see also, e.g.*, *Attea v. Univ. of Miami*, 678 F. App'x 971, 975 (11th Cir. 2017) (denying Rule 60(b)(3) motion based on alleged fraud in discovery in part because "fraud and misrepresentation during the discovery process . . . is not new evidence"). Indeed, Plaintiffs make no attempt to suggest those rulings were "contrary to law," so Judge Valle's legal analysis (as it should) stands. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."); *Palmore v. Hicks*, 383 Fed. App'x. 897, 900 (11th Cir. 2010) ("Where a party failed to object to a magistrate's ruling regarding a non-dispositive pretrial matter, the party has forfeited his right to challenge the ruling[.]") (citations omitted). They state only in passing, and conclusory fashion, that "the Magistrate never ruled on any of these discovery issues[.]" DE 261 at 3.

It is a matter of record, however, that "these discovery issues" were raised and ruled upon before entry of the Final Judgment. In the Discovery Motion Plaintiffs claimed Chase "lied" about a "made-up SAR Privilege," to conceal a Congressional subpoena ("Subpoena"), and an analysis of round-number transactions involving Plaintiffs' accounts. DE 213 at 1.[3] Plaintiffs argue, "the now-disclosed

---

[3]      The Subpoena was issued by the House of Representatives' Financial Services Committee pursuant to its legislative and oversight authorities, as part of an investigation into the financial industry's

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

Congressional Subpoena and Round Numbers Proffer confirm" somehow that redactions in Chase's document production, made pursuant to the Bank Secrecy Act ("BSA") and its implementing regulations (the "SAR Privilege"), were "lies." DE 212 at 26. They asked the Court to "review Chase's redacted documents, in camera, because they were redacted based on a made up SARs privilege," and they purported to "need discovery, including depositions, into Chase's claim that Plaintiffs were put on Chase's AML list because Plaintiffs' transactions were in round numbers and based on the Congressional Subpoena, and into Chase's recently discovered political bias." DE 213 at 1.

In the Objections, in addition to the "SAR Privilege," the "round numbering analysis" and "congressional subpoena," Plaintiffs allege "withholding the existence and text of the applicable standard operating policy ('SOP')," referring to a document titled "Procedure & Governance." (DE 226-2, "SSU Procedure"). DE 261 at 1. The Objections do not mention "recently discovered political bias" or challenge Judge Valle's ruling that Plaintiffs' new so-called "evidence" of "purported recently discovered political bias" was "not relevant to the issues before the court", despite the latter arguments comprising part of Plaintiffs' argument in the Discovery Motion. DE 253-2 at 50:15–51:11.

"As to the SARs privilege," Judge Valle correctly recognized, "this is the third time this issue has been raised before the court." DE 253-2 at 47:5–6. To be sure, Plaintiffs first moved the Court in November 2022 to compel disclosure of the material, hereinafter referred to as the "Confidential SAR Privileged Material," redacted from Chase's document production. *See* DE 59 ("Motion to Compel Unredacted Documents"). Judge Valle denied the motion because "the SAR [p]rivilege is an unqualified discovery and evidentiary privilege that a financial institution is not permitted to waive," and declined to conduct an in camera review. DE 67; *see* DE 253-2 at 47:6–9 ("I found that the [SAR] privilege 'is an unqualified discovery and evidentiary privilege that a financial institution is not permitted to waive.'"). After that, Plaintiffs' Second Motion for Sanctions (DE 170, "Second Sanctions Motion") again sought an *in camera* review of the redacted Confidential SAR Privileged Material, and advanced the very same allegations they now raise again post-Judgment. *See, e.g.*, DE 170 at 2 ("Chase … unilaterally selected records to . . . redact . . . claiming they related to [SAR]. [T]he court . . . [should] conduct an in-camera review of Chase's redactions"). The Second Sanctions Motion was fully briefed, and the Court heard over two hours of argument from counsel, after which the Court ruled that Chase did not act willfully or in bad faith, and found no fraud has been practiced upon it. *See* DE 191; DE 198;

---

compliance with banking regulations and statutes, including the BSA, and in particular anti-money laundering regulations and statutes. *See* DE 226-1, Subpoena, at 1. The Subpoena sought information, among other things, about Monarch and its financial dealings. *See id.*

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

DE 210 at 61:8–62:8 ("I do not find that the Defendants acted willfully or in bad faith . . . Bad faith exists when the Court finds that a fraud has been practiced upon it or that the very temple of justice has been defiled"); *id.* at 62:17–19 ("I find first that there is no evidence of bad faith warranting the exercise of the Court's inherent powers"); DE 253-2: at 47:17–21 ("Moreover, in addressing plaintiffs' argument that defendant committed fraud on the court through its assertion of a bogus SAR privilege, the court found at the time that defendant's conduct did not rise to the level of willfulness or bad faith. Again, that is in the hearing transcript . . ."). The Court denied that request for an *in camera* review, too. *See id.* at 64:15–16. Plaintiffs did not appeal either order issued by Judge Valle, as provided for in Rule 72(a).

Plaintiffs' allegations regarding the "round numbering analysis" and "congressional subpoena" were also raised in Plaintiffs' Second Sanctions Motion, and ruled upon by the Court, as recognized by Judge Valle. *See* DE 253-2 at 46:12–23 ("Starting with the Congressional subpoena, plaintiffs make the same arguments in the current motion as they previously made before me in their second motion for sanctions. The undersigned already considered these arguments . . . . Turning to the round number transactions, plaintiffs reiterate arguments previously raised in their second motion for sanctions. As with the Congressional subpoena issue, the undersigned ruled on this issue . . ."). The Second Sanctions Motion sought relief based on, among other things, Chase's alleged failure to timely disclose its analysis of round-number transactions. *See, e.g.*, DE 198 at 3–4 ("Plaintiffs were not able to conduct any discovery or present any evidence about Chase's internal communications and investigations" relating to round number transactions "that may indicate money laundering"). The Court disagreed and found no failure to timely disclose, holding, "the Court is satisfied that the Defendant has sufficiently previously disclosed through Mr. Lauro's testimony that its decision to place Plaintiff on the interdiction list was based, at least in part, on a review of transactional analysis, and transactional analysis would include, of course, the round-number proffer." DE 210 at 64:8–14; *see also* DE 101 ("Defendant's designee testified that the GFIU's recommendation was based on . . . a review of transactions involving Monarch."); DE 253-2 at 46:22–47:4 ("[T]he undersigned ruled on [the round number analysis], finding that defendant has sufficiently previously disclosed through Mr. Lauro's testimony that its decision to place plaintiffs on the interdiction list was based, at least in part, on a review of transactional analysis, and transactional analysis would include, of course, the round number proffer. Again citing to the hearing transcript . . ."). Plaintiffs did not appeal this ruling either.

Plaintiffs also argued in the Second Sanctions Motion, as in the Discovery Motion, that the existence of the Subpoena proved that Chase lied to the Court about its redactions, and that Chase acted

in bad faith by failing to produce the Subpoena sooner. DE 170 at 2, 7, 11.[4] The Court ruled that Chase did not act willfully or in bad faith in relation to the Subpoena, and found no fraud was practiced upon it. DE 210 at 61:8–62:8, 62:17–19. The Court nevertheless prevented the use of the Subpoena at trial, holding that this "remedie[d] any potential prejudice that the Plaintiffs may have suffered." *Id.* 64:6–8 (emphasis added); *see* DE 253-2 at 46:15–18 ("Indeed, the court disallowed use of the subpoena at trial but did not find evidence of fraud on the court. That's upon my review of the hearing transcript . . ."). Plaintiffs did not appeal this ruling.

The Court also already ruled, pre-Judgment, that Plaintiffs were not prejudiced by untimely production of the SSU Procedure. Plaintiffs' first Sanctions Motion (DE 115), filed in February 2023, asked the Court to sanction Chase for the timing of its production, whereupon the Court entered an Order (DE 175) holding, "Plaintiffs [did] not establish[] that Defendant's untimely document productions were willful, reckless, or in bad faith" or "any lasting prejudice . . . as they effectively deposed the FRCP 30(b)(6) witness regarding the document production." Although Plaintiffs now complain about this "unelaborated paperless Order," Plaintiffs did not appeal the Order. DE 212 at 14.

Because Plaintiffs' allegations regarding the Confidential SAR Privileged Material, the "round numbering analysis," the Subpoena, and the SSU Procedure were, as a matter of record, all raised and ruled upon by the Court pre-Judgment, Plaintiffs present no error in Judge Valle's rulings that the Discovery Motion was "akin to a motion for reconsideration of the court's prior discovery rulings" and "plaintiffs cannot resurrect pretrial discovery grievances in the guise of a Rule 60(b) motion." Insofar as the Discovery Motion was based on allegations regarding the Confidential SAR Privileged Material, the "round numbering analysis," the Subpoena, and the SSU Procedure, therefore, the Discovery Motion was an improper attempt to seek reconsideration of discovery grievances in the guise of a Rule 60 motion, the Motion was properly denied, and the Court's analysis of Plaintiffs' Objections should end here.

### 3. The Discovery Motion presents no grounds for post-judgment discovery under *Keelan* or *Catskill*.

Even if Plaintiffs' attempt to resurrect or seek reconsideration of discovery grievances were permitted by Florida law, which it is not, neither *Keelan* nor *Catskill* provides grounds for post-Judgment discovery in this case, as Judge Valle was correct that Plaintiffs have no colorable claim of fraud, and Plaintiffs were not precluded by non-disclosure from fully and fairly presenting their case on a question

---

[4]       As set forth in detail in its Response to the Second Sanctions Motion, Chase denied that Plaintiffs' discovery requests sought production of the Subpoena, or that it acted in bad faith. *See* DE 191 at 9.

that proved dispositive.

        **a.    Plaintiffs have no colorable claim of fraud.**

Apart from rank speculation, Plaintiffs never had any basis to assert that non-disclosure of information pursuant to the SAR Privilege was improper. Under the BSA and its implementing regulations, a financial institution like Chase is required to report any suspicious transactions relevant to a possible violation of law or regulation by creating, filing and using Suspicious Activity Reports ("SARs"). *Federal Deposit Ins. Corp. v. Nason Yeager Gerson White & Lioce, P.A.*, 2014 WL 12617802, at *1 (M.D. Fla. Jan. 17, 2014). Any material that would reveal the existence or non-existence of a SAR "shall not be disclosed." 12 C.F.R. § 21.11(k); 31 C.F.R. § 1020.320(e); *see Lan Li v. Walsh*, 2020 WL 5887443, at *2 (S.D. Fla. Oct. 5, 2020) ("a strong public policy leans heavily in favor of applying SAR confidentiality not only to a SAR itself, but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not.").[5] By not disclosing the Confidential SAR Privileged Material, Chase was, therefore, complying with its obligations under the BSA and its implementing regulations, and Chase cannot be accused of bad faith or misconduct for doing so.

Indeed, on July 21, 2023, during the second day of hearing on Plaintiffs' Discovery Motion, Judge Valle (after notification from Chase it would not object)[6] conducted an *in camera* review of the redacted documents produced by Chase, and determined that the "overwhelming majority of the redactions were proper based on the SARs privilege." DE 253-2 at 49:4–5; *see id.* at 48:19–24. Although Judge Valle identified a "few instances of . . . over-redaction," she held, "these redactions simply do not rise to the level required to find that the defendant or defendant's counsel acted in bad faith or engaged in a fraud on the court." *Id.* at 50:2–6. Judge Valle thus found that "plaintiffs do not have a colorable claim of fraud that would entitle them to seek post-judgment discovery." *Id.* at 51:13–14. Further, Judge Valle ordered Chase to produce new copies of its document production, with those "few instances of . .

---

[5]     Plaintiffs evidently misconstrue the scope of the SAR Privilege. *See* DE 253-1 at 94:21–23 ("MR. KON: No . . . the nonexistence of a SAR is not privileged. MR. LEON: Absolutely incorrect."); *id.* at 111:9–13 ("THE COURT: Just going back to a point. My law clerk was doing a little research while we were talking. He confirms that the case law says that the case law says that the SAR privilege extends to information reviewing existence or nonexistence of a SAR.").

[6]     Plaintiffs falsely assert that "Chase offered that, in exchange for its redaction counsel not testifying about these issues[.]" DE 261 at 5–6. No such exchange was offered or even contemplated, and Plaintiffs do not identify any such offer in the hearing transcript. Moreover, Chase's "redaction counsel," Daniel Kim, was present for entirety of the evidentiary hearing, and was listed on Chase's Witness and Exhibit List, DE 233, but Plaintiffs made no attempt to call him as a witness to testify.

. over-redaction" unredacted. *Id.* at 49:5–50:3. Chase produced the unredacted documents, as ordered, on July 28, 2023. Tellingly, and contrary to Plaintiffs' repeated accusations that Chase "lied" about a "made-up SAR Privilege" to conceal information either harmful to Chase or favorable to Plaintiffs, Plaintiffs make no attempt in their Objections to suggest that any of the unredacted information was even relevant to their claims.[7]

Plaintiffs advance no argument in their Objections that Judge Valle's ruling, "plaintiffs do not have a colorable claim of fraud," was clearly erroneous or contrary to law. Rather, remarkably, they concede no fraud was alleged. *See* DE 261 at 7. ("Colorable fraud was not needed or even alleged."). Therefore, the ruling should stand. *See* Fed. R. Civ. P. 72(a); *Palmore*, 383 Fed. Appx. at 900.

Nevertheless, Plaintiffs argue in their Objections, referring to "due process," that "the Court should independently review both the documents that the Magistrate reviewed *in camera,* as well as the *ex parte* hearing transcript" and "Plaintiffs, or at least their counsel, should be able to see and analyze the unredacted information, withheld documents and hearing transcript." DE 261 at 18.[8] But, "there are many reasons judges properly hold *ex parte* hearings," in particular "when there is a countervailing need for confidentiality." *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1266–67 (11th Cir. 2009); *Clifford v. United States*, 136 F.3d 144, 149 (D.C. Cir. 1998) ("Even within the context of a single adversary proceeding, communications between a judge and one party are not per se deprivations of the due process rights of the opposing party, and consequently, not all *ex parte* communications must be disclosed, particularly when there is a countervailing need for confidentiality."). Here, the "countervailing need for confidentiality" is plain, and Plaintiffs should not "be able to see and analyze the unredacted information, withheld documents and hearing transcript." DE 261 at 18. "[T]he release of any SAR through civil discovery could harm the law enforcement interests the Act was intended to promote. Release of an SAR could compromise an ongoing law enforcement investigation, tip off a criminal wishing to evade detection, or reveal the methods by which banks are able to detect suspicious activity." *Cotton v.*

---

[7]     Notably, Plaintiffs' central allegation is that Chase "lied" by redacting the term "subpoena" from the AML Interdiction List Request. DE 212 at 1, 7, 23. The Court and Plaintiffs now know, Chase did not lie. Where Plaintiffs accuse Chase of redacting the term "subpoena," the redacted term was "external referral," which was previously disclosed during the deposition of Chase's corporate representative. DE 79-1 at 23:3–19; DE 263-1.

[8]     Specifically, Plaintiffs say, "the redacted AML Interdiction List Request and AML policy are the most central of documents underlying Chase's qualified privilege defense." *Id*. at 5. But the redacted AML Interdiction List Request and AML policy were among the first documents produced in discovery, and neither document was cited in Chase's Motion for Summary Judgment, or Plaintiffs' response thereto. *See* DE 90; DE 91.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

*PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002). Further, by repeatedly requesting an *in camera* review, Plaintiffs effectively sought "*ex parte* communication[s] [with] the Court concerning context," because Chase "remains best qualified to assess when the [SAR] privilege applies." *Wiand v. Wells Fargo Bank, N.A.*, 2013 WL 12156524 *4 (M.D. Fla. June 10, 2013). As Judge Valle aptly stated: "You can't get more *ex parte* than *in camera*." DE 253-2 at 13:17–21.[9]

Regardless, as Plaintiffs do not, and cannot, challenge Judge Valle's ruling that "plaintiffs do not have a colorable claim of fraud," and instead concede "[c]olorable fraud was not . . . even alleged," Plaintiffs present no grounds for relief from the Final Judgment, or additional post-Judgment discovery, under *Keelan*.

### b. Plaintiffs were not precluded by non-disclosure from fully and fairly presenting their case on a question that proved dispositive.

After a two-day evidentiary hearing on the alleged "discovery misconduct" complained of, having heard testimony from four witnesses and conducted an *in camera* review of the redacted Confidential SAR Privileged Material, the Court found no grounds for relief, and iterated its prior rulings. Judge Valle did not err in denying relief under *Catskill*. Indeed, Plaintiffs do not and cannot "prove by clear and convincing evidence" that Chase perpetrated a "fraud," or that Chase's conduct in any way precluded Plaintiffs from "fully presenting their case" on the "threshold, dispositive issue," as required for relief under Rule 60(b)(3) and *Catskill* (if *Catskill* were binding on this Court, which it is not). DE 263 at 5–6, 9, 14–18, 20, 22–25 (citing *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003); *Hirsch v. Nova Se. Univ., Inc.*, 289 F. App'x 364, 368 (11th Cir. 2008); *Circuitronix, LLC v. Shenzhen Kinwong Elec. Co., Ltd.*, 2020 WL 8459195 (S.D. Fla. Aug. 14, 2020); *Armstrong v. The Cadle Co.*, 239 F.R.D. 688, 695 (S.D. Fla. 2007); *Reynolds v. United States*, 2018 WL 9619354, at *2 (S.D. Fla. July 18, 2018)); *Catskill*, 286 F. Supp. 2d at 309.

Plaintiffs cannot prove that they were precluded by non-disclosure of the SSU Procedure from fully presenting their case on the threshold, dispositive issue. *See* DE 261 at 18–20. Plaintiffs had the opportunity to, and did, take discovery relating to the SSU Procedure. Plaintiffs knew in December 2022

---

[9]     Also, Chase's counsel never, as Plaintiffs claim, "conceded on the record that below the redactions in the AML Interdiction List Request, for example, there were references to negative media, the congressional subpoena and a round numbering analysis." DE 21 at 18. At the hearing on the Second Sanctions Motion, cited by Plaintiffs, counsel, rather, emphasized, "I cannot divulge what is under those redactions." DE 210 at 7:3–8 ("[I]f Your Honor is going to do an in-camera inspection and the words 'Congressional subpoena' do not appear Your Honor, I'm going to seek a large monetary award against the Plaintiffs here. I cannot divulge what is under those redactions, but the notion that they know what's been redacted is equally absurd."); *see id.* at 24:15–18 ("I cannot, and I am not allowed by law to discuss what was redacted, I literally am prevented and precluded from saying so much as I would like[.]").

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8ᵀᴴ FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

that it was Chase's policy to issue the Statement to third parties when a wire transfer was cancelled. Although he was unaware of the specific SSU Procedure at the time of his deposition, Anthony Lauro, Chase's first 30(b)(6) witness, testified that Chase's policy was to send the Statement to third parties involved in wire transactions with an individual or entity on Chase's internal AML interdiction list. *See, e.g.*, DE 79-1 at 58:17–22. The SSU Procedure, which Chase produced on February 9, 2023, simply corroborated what the Plaintiffs already knew from prior discovery.

Perhaps more important, Chase produced the SSU Procedure before Plaintiffs took the deposition of Chase's second 30(b)(6) witness, Michael Biratsis. And in that deposition, Plaintiffs extensively questioned Mr. Biratsis regarding the SSU Procedure. Mr. Biratsis, as a manager within the SSU, was prepared to respond to this questioning, and explained the processes by which the communications were made to third parties. DE 115-2.

Perhaps more critically, Chase produced the SSU Procedure before Plaintiffs' February 21, 2023, deadline to respond to Chase's Motion for Summary Judgment, a deadline that was extended with Chase's agreement. *See* DE 99; DE 100; DE 103; DE 104. Chase offered to provide even more time for Plaintiffs to pursue discovery. *See* DE 115 at 11 n. 9 ("Chase's counsel commendably has agreed to provide yet additional time . . . to try and resolve the late disclosures."). But Plaintiffs refused Chase's offer, and instead attempted to avoid a ruling on the merits by insisting on case-dispositive sanctions. *See id.* If Plaintiffs were genuinely concerned about their ability to fully present their case, they could have accepted Chase's offer. *See Leon*, 2018 WL 6250529, at *5 ("A party cannot successfully bring a Rule 60(b)(3) motion where the 'pursuit of truth was [not] hampered by anything except [the movant's] own reluctance to undertake an assiduous investigation.'"); *Waddell*, 329 F.3d at 1310 (denying 60(b)(3) motion where movant could have sought an extension of discovery, a stay of proceedings, or a stay of summary judgment). To be sure, <u>Plaintiffs relied on the SSU Procedure in their Response to Chase's Motion for Summary Judgment</u>. *See* DE 108. They in fact lead the Introduction to their Response with the definition of "sanctions" set forth in the SSU Procedure, in an effort to show the Statement was defamatory. DE 108 at 1.

"[A]s to the subpoena, the round numbered transactions and the SARs privilege," the Court held after the evidentiary hearing on Plaintiffs' Discovery Motion, Plaintiffs "have not provided sufficient facts or law to warrant a reversal or amendment of [the Court's] prior rulings[.]" DE 253-2 at 50:8–11. Indeed, the record is clear, the Court's prior rulings were correct. *See* DE 210 at 64:8–14 ("[T]he Court is satisfied that the Defendant has sufficiently previously disclosed through Mr. Lauro's testimony that its decision to place Plaintiff on the interdiction list was based, at least in part, on a review of transactional

analysis, and transactional analysis would include, of course, the round-number proffer."); DE 101 ("Defendant's designee testified that the GFIU's recommendation was based on . . . a review of transactions involving Monarch."). Anthony Lauro, Chase's first 30(b)(6) witness, testified at Plaintiffs' December 14, 2022, deposition that a reason Chase placed Plaintiffs on the AML interdiction list was based on a review of transactions involving Monarch, which "would include, of course, the round-number proffer." DE 210 at 64:8–14; *see, e.g.*, DE 79-1, 161:5–10 ███████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████ During the course of discovery, Plaintiffs made no further inquiry whatsoever on the topic. In relation to the Subpoena, after considering Plaintiffs' allegations and argument of counsel on the Second Sanctions Motion, the Court ruled that Chase did not act willfully or in bad faith, and found no fraud was practiced upon it. DE 210 at 61:8–62:8; 62:17–19. The Court prevented the use of the Subpoena at trial because it was not disclosed on a timely basis, and correctly held that this "remedie[d] any potential prejudice that the Plaintiffs may have suffered." *Id.* 64:6–8 (emphasis added); *see AM Grand Ct. Lakes LLC v. Rockhill Ins. Co.*, 2022 WL 4226400, at *15 (S.D. Fla. Apr. 4, 2022) ("Plaintiffs' discovery violations before trial—which the Court remedied by imposing sanctions—did not prevent Defendant from fully and fairly presenting [their] . . . defense.").

Indeed, Plaintiffs' Second Sanctions Motion did not raise any argument whatsoever concerning Chase's then-pending Motion for Summary Judgment (DE 90), or any suggestion that Chase's analysis of round-number transactions, or the Subpoena, or discovery regarding the analysis or Subpoena, could help them avoid a ruling against them. So Plaintiffs cannot now persuasively complain that the evidence might have helped them to avoid summary judgment. *See Waddell*, 329 F.3d at 1310 ("Plaintiffs never sought to stay the summary judgment proceeding . . . . In this context, Plaintiffs have no right to relief from the district court's entry of summary judgment . . . Before the entry of summary judgment, Plaintiffs could have sought to depose . . . or . . . request a continuance pursuant to Fed. R. Civ. P. 56(f) . . . They cannot now persuasively complain that Garnto had additional evidence of which they were unaware and which might have helped them to avoid summary judgment.") (emphasis added); *Reynolds*, 2018 WL 9619354, at *2 ("[A]ny arguments the party failed to raise in the earlier motion will be deemed waived.") (emphasis added); *Leon,* 2018 WL 6250529, at *5.

Moreover, Plaintiffs do not and cannot remotely establish that Chase's analysis of round-number transactions, or the Subpoena, were even relevant to the "threshold, dispositive issue." *Hirsch*, 289 F. App'x at 368. Indeed, prior to entry of the Final Judgment, Plaintiffs of course opposed the use

of the transactional analysis and Subpoena as evidence at trial. *See* DE 163, 170. Only now, after entry of the Final Judgment, do Plaintiffs argue that the analysis of round-number transactions, and the Subpoena, are somehow favorable to their case.

Plaintiffs argue that Chase's analysis of round-number transactions, and the Subpoena, "would be admitted as part of Chase's good faith reliance," and refer to "political bias." DE 212 at 16. According to Plaintiffs, however, Plaintiffs knew about and had evidence of the so-called "political bias" before the discovery cutoff. *See* DE 212 at 22 ("Gitman testified that Chase was motivated by political and personal animus against him and Monarch. This testimony is corroborated by Chase's inexcusable accusation in the AML Interdiction List Request that the Plaintiffs were involved in Russia's interference in the 2016 election[.]"). Plaintiffs explained in their Discovery Motion, "[t]he non-redacted portions of Chase's AML Interdiction List Request make it likely that Chase added Plaintiffs to its interdiction list for political reasons." DE 213 at 8; *see* DE 212 at 16 ("[E]ven Chase's highly-redacted productions provide evidence of Chase's political bias."). But the non-redacted portions of Chase's AML Interdiction List Request" were among the first items disclosed during discovery. Plaintiffs had every opportunity to take discovery into "political bias." Similar to Chase's "review of transactions involving Monarch," as Judge Valle recognized in ruling on the Discovery Motion, Plaintiffs simply chose not to ask Chase's corporate representative any questions about the issue. *See* DE 253-2 at 51:7–9 ("Moreover, plaintiffs did not question defendant's corporate representatives as to defendant's purported political bias, although the 2016 Russian election interference claim was noted in the unredacted form in the AML list disclosed to plaintiff during discovery.").[10] Plaintiffs' position is further undermined by the fact that, according to Plaintiffs, they knew about and had evidence of the "political bias" before Chase filed its Motion for Summary Judgment. Yet they chose not to present that evidence or make any argument regarding "political bias" in their response. And again, the Objections do not mention "political bias" or challenge Judge Valle's ruling that the "purported recently discovered political bias" was disclosed by Chase during discovery, and was "not relevant to the issues before the court." DE 253-2 at 50:15–51:11.

---

[10]     Through two depositions, Plaintiffs did not ask Chase's corporate representatives a single question about "political bias" or "Russia's interference in the 2016 election." Notably, though, post-Judgment at the July 20, 2023, evidentiary hearing, Anthony Lauro, Chase's corporate representative who, as a member of the Global Financial Crimes Group at Chase, was responsible for recommending that Plaintiffs be placed on Chase's AML Interdiction List, testified that he does not have "any personal ill-will or . . . personal malevolence to either Monarch Air Group or David Gitman," DE 253-1 at 109:4–7; does not have "any malicious intent towards them," *id*. at 109:8–10; and "[p]rior to receiving their names on an AML Interdiction List Request, did [not] know or have any reason to believe that either of these entities existed." *Id*. at 109:11–14.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8ᵀᴴ FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Regardless, "Chase's good faith reliance" was not a dispositive issue in this case. Plaintiffs have continually misconstrued Florida law regarding the element of good faith in a qualified privilege defense. *See, e.g.*, DE 212 at 1 ("Chase failed to present evidence that its false communications were done . . . in good faith."); DE 205 at 8 ("Plaintiffs argue that Chase's qualified privilege defense fails because Chase failed to testify about what 'good faith' reliance it had."). As the Court held in its Summary Judgment Order, under Florida law <u>good faith is presumed</u>[.]" DE 205 at 8 (emphasis added) (citing *Nodar v. Galbreath*, 462 So. 2d 803, 810 (Fla. 1984)); *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d DCA 2000) ("Once it is determined that [the statement] is qualifiedly privileged, it becomes cloaked with a <u>legal presumption of good faith</u>.") (emphasis added)); *see Nodar*, 462 So. 2d at 810 ("The privilege instead raises a presumption of good faith and places upon the plaintiff the burden[.]").[11]

The Court granted summary judgment to Chase because the undisputed facts established that the Statement—"We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy"—was made "on a privileged occasion." DE 205 at 7. And "[w]here it has been established that

---

[11]     What is more, the factual contention on which Plaintiffs argument about "good faith" rests, that "while Chase claims it was spewing these falsehoods pursuant to its 'standard operating processes,' that is not true," has no evidentiary basis. DE 212 at 21. And none is identified by Plaintiffs. Their Motion refers to an "AML Policy" that has nothing to do with the standard operating processes pursuant to which Chase made the Statements, and which Chase has never suggested has anything to do with the standard processes pursuant to which it made the Statements. *Id.* ("The raw Blog Post surely does not meet this standard."); DE 91. The AML Policy to which Plaintiffs refer was not even in the record for summary judgment. Further, the undisputed evidence established that the alleged defamatory Statement, "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy," was in fact made pursuant to Chase's standard operating processes. *See* DE 91 at ¶ 17; DE 79-1 at 58:17–59:3 ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ Under the applicable Chase standard process, the "standard language" is populated when employees in the SSU department confirm a transaction was flagged for compliance and then select the "compliance" option from a short choice of options in a drop-down menu on their screens. *See* DE 226-3 at 15:1–9 ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ The standard process described in testimony is also reflected in the SSU Procedure. *See* DE 226-2 at 68 ████████████████████████████ ████████████████████████████████████ █████████ ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ So, as the Court aptly recognized, here, "[i]n any event," even if it were not presumed (which it is), "good faith may be inferred by the fact that the statements were made pursuant to Chase's standard operating processes." DE 205 at 8–9.

defamation occurred on a privileged occasion, then the plaintiff must prove that the defamation was made with express malice." *Id*. The Court concluded, correctly, that Plaintiffs "failed to meet their burden to show express malice." *Id*. at 11. Plaintiffs' Objections do not mention the dispositive question of express malice, much less establish that non-disclosure of Chase's analysis of round-number transactions, or the Subpoena, precluded Plaintiffs from fully presenting their case on the issue.[12]

As the Court reiterated in denying Plaintiffs' Discovery Motion, "any potential prejudice that the Plaintiffs may have suffered" was "remedied." DE 210 64:4–8; DE 253-2 at 50:8–13. Plaintiffs do not and cannot prove that Chase precluded Plaintiffs from fully presenting their case on the threshold, dispositive issue, as required for relief under Rule 60(b)(3) and *Catskill*. Plaintiffs' arguments regarding the SSU Procedure, the analysis of round number transactions, and the Subpoena, present no error in Judge Valle's Order.

### 4. Plaintiffs are not entitled to relief under the waiver-by-affirmative-reliance doctrine, the at-issue doctrine, or the sword and shield doctrine.

Lastly, Plaintiffs argue that they are entitled to relief under the "waiver by affirmance doctrine (which is referred to in case law as the "waiver-by-affirmative-reliance" doctrine), the "at issue" doctrine, and the "sword and shield" doctrine. DE 261 at 12–13; *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 286 F.R.D. 661, 664 (S.D. Fla. 2012). They claim "[t]hree decisions from the Southern and Middle Districts of Florida are extremely helpful"—(1) *QBE Ins. Corp.*; (2) *Batchelor v. Geico Cas. Co.*, 142 F. Supp. 3d 1220 (M.D. Fla. 2015); and (3) *Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. United States*, 946 F. Supp. 2d 1302 (M.D. Fla. 2013)—and allege that Chase "wanted to

---

[12]   The Objections also allude to the elements of a qualified privilege defense requiring the defamatory statement to have been made in a proper manner, on a proper occasion. *See* DE 261 at 8, 11–13, 18. But the argument raised in the Motion for Relief was that Chase failed to meet its burden to prove those elements—not that Plaintiffs were precluded by non-disclosure from presenting their case on those elements such that Plaintiffs may be entitled to relief under Rule 60(b)(3) or *Catskill*. *See, e.g.*, DE 212 at 1 ("Chase failed to present evidence that its false communications were done in a proper manner, on a proper occasion"). In any event, to establish the proper manner and occasion of the Statements, the Court cited the undisputed facts that "[t]he statements concerned only the transactions Chase was unable to execute and did not mention either Plaintiff by name," DE 205 at 8 (citing DSOF ¶ 15), "Chase communicated those statements through private messages only to those account holders who were attempting to transact with Monarch through Chase," and "the apparent purpose of the statements was to inform those account holders why Chase was unable to execute the transaction." *Id*. (citing DSOF ¶¶ 14, 16). The Court added, "there is no evidence that this information was disclosed to anyone other than the Chase account holders who were attempting to transact with Monarch through Chase." *Id*. Plaintiffs do not and cannot prove that Chase precluded Plaintiffs from fully presenting their case regarding those facts, and do not attempt to argue that they will be able to dispute any of those facts through additional post-Judgment discovery.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

selectively use privileged information," referring to the analysis of Plaintiffs' transactions and the Subpoena. *Id.* at 13; *see id.* at 14 ("Chase must choose between producing all the information and documents relating to the Hidden Reasons or continuing to maintain a SAR privilege.").

The Court "may not consider" arguments raised for the first time in objections to a Magistrate's order. *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 2010 WL 1049793, *2 (M.D. Fla. 2010) ("In reviewing the magistrate judge's order [on a nondispositive matter], the district court may not consider new materials or legal arguments raised for the first time in the objection."); *see Combs v. Town of Davie*, 2007 WL 676102, *2 (S.D. Fla. 2007) ("declin[ing] to consider arguments not raised before the Magistrate Judge, especially . . . in the consideration of Objections to a non-dispositive pretrial Order."); *E.E.O.C. v. Jack Marshall Foods, Inc.*, 2010 WL 55635, at *2 (S.D. Ala. Jan. 4, 2010) ("In reviewing a magistrate judge's nondispositive ruling, this [c]ourt does not consider matters not placed before that judge.") (quotation omitted). Plaintiffs' Discovery Motion did not raise any argument regarding the waiver-by-affirmative-reliance doctrine, or the sword and shield doctrine. The arguments are raised for the first time in the Objections, so the Court "may not consider" them. *Voter Verified*, 2010 WL 1049793, *2; *see Williams*, 557 F.3d at 1292*; Combs*, 2007 WL 676102, *2; *Jack Marshall Foods*, 2010 WL 55635, at *2.

Moreover, even if the Court were able to consider those arguments raised for the first time in Plaintiffs' Objections (which it is not), the "waiver-by-affirmative-reliance" doctrine, the "at issue" doctrine, the "sword and shield" doctrine, *QBE Ins. Corp.*, *Batchelor*, and *Kearney* are all entirely inapplicable here. "The waiver-by-affirmative-reliance doctrine arises in both the attorney-client privilege and work-product doctrine scenarios[.]" *QBE Ins. Corp.*, 286 F.R.D. at 664. Under the waiver-by-affirmative-reliance doctrine, "[w]hen a party affirmatively relies on privileged information, then the information is automatically placed into issue and any privilege that would otherwise attach is impliedly waived." *Id.*; *see id.* at 663 ("QBE is the master of its own privilege . . . if QBE places the privileged matters in issue by seeking to substantively rely on them by introducing privileged documents and privileged testimony, then it may very well waive the applicable privilege."). Similarly, under the at-issue doctrine, "an insurer who relies on advice of its counsel as a defense in a bad faith claim waives the attorney-client communication privilege, when a privileged communication is necessary to establish the defense. *See Batchelor*, 142 F. Supp. 3d at 1243 ("[A]n insurer who relies on advice of its counsel as a defense in a bad faith claim waives ACCP under the 'at issue' doctrine when a privileged communication is necessary to establish the defense.") (citations and internal quotations omitted); *see id.* at 1244 ("Geico's choices to present this testimony from [counsel] plainly constitutes the reliance on

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

an advice of counsel defense that . . . would operate as a waiver of ACCP."). "Under the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged." *Kearney*, 946 F. Supp. 2d at 1317; *see id.* at 1318 ("Defendant . . . may not and will not offer into evidence a document it withheld on privilege grounds.").

The issues here do not involve "the attorney-client privilege or "work-product doctrine scenarios[.]" *QBE Ins. Corp.*, 286 F.R.D. at 664. And the Court has already ruled, correctly, in denying Plaintiffs' Motion to Compel Unredacted Documents (where Plaintiffs first argued that Chase waived the SAR Privilege), "the SAR [p]rivilege is an unqualified discovery and evidentiary privilege that a financial institution is <u>not permitted to waive</u>." DE 67 (citing *Fed. Trade Comm'n v. Marcus*, 2020 WL 1482250, at *3 (S.D. Fla. Mar. 27, 2020); *Lan Li v. Walsh*,  2020 WL 5887443, at *3 (S.D. Fla. Oct. 5, 2020)) (emphasis added); *see* DE 59 at 5–6 ("Chase waive[d] the privilege relating to these provisions[.]"); DE 63 at 2 ("[T]he privilege created by 31 U.S.C. § 5318, 12 C.F.R. § 21.11, and 31 C.F.R. § 1020.320 belongs to the government and is an unqualified privilege that cannot, as a matter of law, be waived by Chase.") (citing *Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 814 (N.D. Ill. 2002) ("[T]he confidentiality privilege created by the [BSA] and the regulations is not qualified and is not subject to waiver by the financial institution . . . . and courts have refused to order an exception to that privilege.")). Indeed, Chase is not "the master of its own privilege" with respect to the SAR Privilege. *QBE Ins.*, 286 F.R.D. at 663. The SAR Privilege belongs to the federal government, and does not operate (like the attorney-client privilege) as a "shield" for Chase. *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 166 (S.D.N.Y. 2014) ("Suspicious Activity Reports ('SARS') are accorded special protections under U.S. law, which prohibits their disclosure."); *Cotton*, 235 F. Supp. 2d at 815 ("Release of a SAR could compromise an ongoing law enforcement investigation, tip off a criminal wishing to evade detection, or reveal the methods by which banks are able to detect suspicious activity.").

Further, the doctrines cited by Plaintiffs do not apply, here, because Chase did not "affirmatively rel[y] on privileged information" or raise "a claim that will necessarily require proof by way of a privileged communication." *QBE Ins.*, 286 F.R.D. at 664; *Kearney*, 946 F. Supp. 2d at 1317. There was no Confidential SAR Privileged Material cited, much less relied upon, in Chase's Motion for Summary Judgment (DE 90), or the Court's Summary Judgment Order (DE 205). To illustrate the point more specifically, as remedies under the cited doctrines Plaintiffs ask the Court to "disallow Chase from supporting its case with testimony, documents or arguments about its SOPs and any allegedly SARs-privileged compliance with same, or disregard such arguments," or, "[a]lternatively," they say, "an

19

adverse inference should be drawn as to Chase's claimed compliance with its SOPs." DE 261 at 14. But the record reflects no "allegedly SARs-privileged compliance" with "SOPs." As for the standard operating processes pursuant to which Chase made the alleged defamatory Statement, "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy," there is no Confidential SAR Privileged Material cited or relied upon in Chase's Motion, or the Summary Judgment Order, to establish "compliance." And certainly neither the analysis of Plaintiffs' transactions, nor the Subpoena, even if it were "privileged information,"[13] was cited or relied upon anywhere in the Motion or Order. Neither the analysis of Plaintiffs' transactions, nor the Subpoena, did or could play any role in Chase's process pursuant to which Chase made the alleged defamatory Statement. *See supra*, n. 11; DE 263 at 19–20.

Notably as well, for purposes of deciding upon Plaintiffs' Objections, those remedies Plaintiffs' seek have no connection to Plaintiffs' Discovery Motion, or anything to do with post-Judgment discovery in support of Plaintiffs' Motion for Relief.[14] To the extent the Objections rest on Plaintiffs arguments, raised for the first time, regarding the waiver-by-affirmative-reliance doctrine, the at-issue doctrine, or the sword and shield doctrine, the Objections should be denied.

### IV.   Conclusion

For the foregoing reasons, Plaintiffs' Objections (DE 261) should be denied.

Dated: September 15, 2023

Respectfully submitted,

**Benjamin Weinberg**
Derek E. León
 Florida Bar No. 625507
Benjamin Weinberg
 Florida Bar No. 061519
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Email:  dleon@leoncosgrove.com
Email:  bweinberg@leoncosgrove.com
Email:  eperez@leoncosgrove.com

*Counsel for Defendant JPMorgan Chase Bank, N.A.*

---

[13]    *QBE Ins.*, 286 F.R.D. at 664. Plaintiffs have previously taken the position, consistent with Chase's, that this information was not privileged. *See, e.g.*, DE 210 at 24:18–19 ("[T]he subpoena as a stand-alone document is not subject to SAR."); DE 253-1 at 131:24-1 ("Q. So the identity of the Congressional subpoena would not trigger a SAR[], correct? A. No[.]").

[14]    Plaintiffs' arguments regarding the waiver-by-affirmative-reliance doctrine, the at-issue doctrine, and the sword and shield doctrine, were not raised in Plaintiffs' Motion for Relief either, or any time before the Final Judgment was entered. *See* DE 212.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM